**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

Channel 781 News,

           Plaintiff,

     v.

Waltham Community Access Corporation

           Defendant.

Case No.: 1:24-cv-11927-PBS

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMSS**

**TABLE OF CONTENTS**

INTRODUCTION ....................................................................................................1

I.    CHANNEL 781 AMPLY ALLEGES THAT ITS USE OF MEETING VIDEO
      EXCERPTS IS A SELF-EVIDENT FAIR USE. ............................................2

      A.    Factor 1 Clearly Favors Fair Use Because Channel 781's Use of the
            Excerpts Is Critical, Noncommercial, Aids Accessibility, and Is
            Distinct From WCAC's Use. .................................................................3

      B.    Factor 2 Clearly Favors Fair Use Because Gavel-to-Gavel Meeting
            Videos Are Highly Factual Works with Little or No Creative Input by
            WCAC.....................................................................................................6

      C.    Factor 3 Clearly Favors Fair Use Because Channel 781 Used Only As
            Much of the Videos As Necessary to Further its Transformative
            Purpose...................................................................................................7

      D.    Factor 4 Clearly Favors Fair Use Because Channel 781's Excerpts Did
            Not and Could Not Affect WCAC's Market. ......................................11

II.   CHANNEL 781 ALLEGES AN ACTIONABLE MISREPRESENTATION
      UNDER 17 USC § 512(F). ..........................................................................12

      A.    The DMCA Requires Copyright Owners to Consider Fair Use Before
            Sending a Takedown Notice ................................................................13

            1.    Section 512(f) Is Designed to Inhibit Abuse of Copyright Law
                  To Shut Down Lawful Speech, Including Fair Uses. ................13

            2.    The Ninth Circuit Court of Appeals Correctly Interpreted
                  Section 512 to Require Rightsholders to Consider Whether a
                  Use Was Lawful Under Section 107 Before Sending a
                  Takedown Notice. .....................................................................15

            3.    The Ninth Circuit Incorrectly Interpreted Section 512(f) to
                  Require Subjective Knowledge that the Targeted Use Was Fair..............16

      B.    This Court Should Apply an Objective Test to § 512(f) and Hold that
            WCAC, As Alleged, Acted Unreasonably............................................17

      C.    Even If This Court Applies the Ninth Circuit Subjective Test to § 512
            (f), Channel 781 Has Stated a Claim for Misrepresentation. ...............18

            1.    Channel 781 Properly Plead WCAC's Failure to Consider
                  Whether Channel 781's Use of the Excerpted Clips Constituted
                  Fair Use .....................................................................................18

CONCLUSION.....................................................................................................21

CERTIFICATE OF SERVICE ............................................................................22

# TABLE OF AUTHORITIES

## Cases

*American Institute of Physics v. Winstead PC*,
   No. 3:12–CV–1230, 2013 WL 6242843 (N.D. Tex. Dec. 3, 2013)..........................................7

*American Society for Testing & Materials v. Public.Resource.Org, Inc.*, 82 F.4th 1262 (D.C. Cir.
   2023) .......................................................................................................................... 4, 5

*Andy Warhol Foundation for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508 (2023)................. 3

*Authors Guild v. HathiTrust*,
   755 F.3d 87 (2d Cir. 2014) ...................................................................................... 6, 8

*Bill Graham Archives v. Dorling Kindersley Ltd.,*
   448 F.3d 605 (2d Cir. 2006) ..................................................................................... 4, 7

*Campbell v. Acuff-Rose Music, Inc.*, U.S. 569 (1994) ..................................................... 3, 7, 10, 11

*Cooper v. Schlesinger,*
   111 U.S. 148 (1884).................................................................................................... 17

*Elvis Presley Enters., Inc. v. Passport Video*,
   349 F.3d 622 (9th Cir. 2003) ...................................................................................... 11

*Feist Publications, Inc. v. Rural Tel. Serv. Co.,*
   499 U.S. 340, 363 (1991)............................................................................................. 6

*Fox News Network, LLC v. TVeyes, Inc.*,
   883 F.3d 169 (2d Cir. 2018) ........................................................................................ 7

*Freeman United Coal Min. Co. v. Fed. Mine Safety & Health Review Comm'n*, 108 F.3d 358
   (D.C. Cir. 1997) ......................................................................................................... 20

*Fuentes v. Mega Media Holdings, Inc.,* No. 09-22979-CIV, 2011 WL 2601356 (S.D. Fla. June 9,
   2011) ........................................................................................................................... 4

*Google LLC v. Oracle Am., Inc.*, 593 U.S. 1 (2021)............................................................ passim

*Haley v. City of Boston,*
   657 F.3d 39 (1st Cir. 2011)........................................................................................... 8

*Harper & Row Publishers, Inc. v. Nation Enterprises*,
   471 U.S. 539 (1985)................................................................................................. 9, 10

*Kane v. Comedy Partners,* No. 00 Civ. 158 (GBD), 2003 WL 22383387 (S.D.N.Y. Oct. 16,
   2003) .......................................................................................................................... 12

*Larson v. Dorland*,
   693 F. Supp. 3d 59 (D. Mass. 2023) .................................................................... 3, 5, 6

*Lenz v. Universal Music Corp.* 815 F.3d 1145 (9th Cir. 2016) ................................. 13, 15, 16, 20

*Lenz v. Universal Music Corp.,* 572 F. Supp. 2d 1150 (N.D. Cal. 2008) .................................... 19

*MFB Fertility, Inc. v. Action Care Mobile Veterinary Clinic, LLC*, No. 23 CV 3854, 2024 WL
    1719347 (N.D. Ill. Apr. 22, 2024) ...................................................................................... 19

*Monsarrat v. Newman,*
    28 F.4th 314 (1st Cir. 2022).......................................................................................... 9, 11

*Nuñez v. Caribbean Int'l News Corp.*, 235 F.3d 18 (1st Cir. 2000) ................................... passim

*Online Pol'y Grp. v. Diebold, Inc.*, 337 F. Supp. 2d 11954 (N.D. Cal. 2004) ........................... 14

*Parmenter v. Prudential Ins. Co. of Am.,*
    93 F.4th 13 (1st Cir. 2024)............................................................................................... 2, 8

*Princeton Univ. Press v. Mich. Document Servs., Inc.,* F.3d 1381 (6th Cir. 1996)..................... 12

*Religious Tech. Ctr. v. Lerma,*
    908 F. Supp. 1353 (E.D. Va., 1995) ..................................................................................... 8

*Ringgold v. Black Ent. Television, Inc.*, 126 F.3d 70 (2d Cir. 1997)............................................ 12

*Rossi v. Motion Picture Ass'n of Am. Inc.,* 391 F.3d 1000 (9th Cir. 2004............................ 16, 20

*Schubert v. City of Rye,*
    775 F. Supp. 2d 689 (S.D.N.Y. 2011) .................................................................................. 8

*Seltzer v. Green Day, Inc.,*
    725 F.3d 1170 (9th Cir. 2013) .............................................................................................. 4

*Shande v. Zoox, Inc.,* No. 22-CV-05821-BLF, 2024 WL 2306284 (N.D. Cal. May 21, 2024).... 19

*SOFA Ent., Inc. v. Dodger Prods., Inc.*,
    709 F.3d 1273 (9th Cir. 2013) .............................................................................................. 8

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
    464 U.S. 417 (1984)............................................................................................................. 6

*Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*,
    756 F.3d 733 (2d Cir. 2014) .............................................................................................. 10

*Tcherepnin v. Knight*, 389 U.S. 332 (1967)................................................................................. 17

*Tresóna Multimedia, LLC v. Burbank High Sch. Vocal Music Ass'n*,
    953 F.3d 638 (9th Cir. 2020) ............................................................................................ 10

*Tuteur v. Crossley-Corcoran*,  961 F. Supp. 2d 333 (D. Mass. 2013).................................. 15, 20

*United States v. Spinney*, 65 F.3d 231 (1st Cir. 1995) ................................................................ 20

*United States v. Tavares,*
    F.3d 4 (1st Cir. 2013)......................................................................................................... 15

*Weinberg v. Dirty World, LLC*, No. CV 16-9179-GW(PJWX), 2017 WL 5665022 (C.D. Cal. Apr. 24, 2017).........................................................................................................19

*Wright* v. Warner Books, Inc., 953 F.2d 731 (2d Cir. 1991) ...................................... 8, 12

*Zaldivar v. City of Los Angeles*, F.2d 823 (9th Cir. 1986)............................................ 18

**Statutes**

17 U.S.C. § 107..................................................................................................... *passim*

17 U.S.C. § 512..................................................................................................... *passim*

**Rules**

Fed. R. Civ. P. 9(b) ....................................................................................................... 19

Fed. R. Civ. P.12(b)(6)..................................................................................................... 2

**Legislative History**

S. REP. NO. 105-190 (1998) .................................................................................... 13, 16

**Other Authorities**

"Committee of the Whole—Minutes of the Meeting" (March 6, 2023).......................... 8

Jennifer M. Urban, Joe Karaganis & Brianna l. Schofield, *Notice and Takedown in Everyday Practice* (March 29, 2016)....................................................................................... 14

Norman J. Singer, SUTHERLAND STATUTORY CONSTRUCTION § 60.02 (7th ed. 2014) ............... 17

**INTRODUCTION**

This case concerns a cable TV government access station abusing the copyright enforcement process established by  Section 512 of the Digital Millennium Copyright Act to censor and harm independent journalists. Section 512(f) exists to deter and hold rightsholders accountable precisely this type of abuse.

Government access stations exist to give citizens a window into the conduct of local government and enable them to participate in and discuss the governmental process with the aid of technology. Defendant Waltham Community Access Corporation's ("WCAC" or "Defendant") government access station, MAC-TV, records meetings of the Waltham city council and other government bodies using city-funded video equipment and posts these hours-long videos to its website. Plaintiff Channel 781 ("Channel 781" or "Plaintiff"), an informal association of citizen journalists, scours these videos for important discussions of the issues its members care about, creates discrete excerpts using small portions of the meetings, and posts them to its YouTube channel with provocative titles to spur further discussion.

That use of video excerpts is clearly lawful under Section 107 of the Copyright Act, which exists to stop copyright from interfering with important expressive activities that don't harm the legitimate interests of the copyright holder. Fair use authorizes uses of copyrighted materials over the objection of the rightsholder when stopping the use "would stifle the very creativity which that law is designed to foster." *Google LLC v. Oracle Am., Inc.*, 593 U.S. 1, 18 (2021)(cleaned up).

As alleged in Channel 781's Complaint, WCAC claims to have the final say over who can use excerpts from the meeting videos it records, based on its own determinations about what constitutes legitimate journalism or discourse, and it persisted with that assertion even after a member of Channel 781 asked WCAC to consider fair use. WCAC sent takedown notices to

1

YouTube using the process established in the DMCA, which caused Channel 781's excerpts, and ultimately its entire YouTube channel, to be disabled on the eve of an important municipal election. Under Section 512(f), this was a knowing material misrepresentation of infringement for which WCAC is liable.

On a motion to dismiss, the Court proceeds by "assum[ing] all well-pleaded facts [are] true, analyz[ing] those facts in the kindest light to the plaintiff's case, and draw[ing] all reasonable inferences in favor of the plaintiff." *Parmenter v. Prudential Ins. Co. of Am.,* 93 F.4th 13, 18 (1st Cir. 2024). WCAC's motion attempts to inject uncertainty into a clear case of fair use, but as Plaintiff demonstrates below, each of its attempts is easily rebuffed by the well-plead allegations in the Complaint. WCAC also misstates the Ninth Circuit's interpretation of Section 512(f), which it asks this Court to apply. Under either the Ninth Circuit's actual, flawed interpretation, or a more correct interpretation of the statute, WCAC has not met the rigorous standard required by Federal Rule of Civil Procedure 12(b)(6). The Court should deny WCAC's motion.

## I.    CHANNEL 781 AMPLY ALLEGES THAT ITS USE OF MEETING VIDEO EXCERPTS IS A SELF-EVIDENT FAIR USE.

Channel 781's use of short clips from lengthy recordings of government meetings for purposes of news reporting, criticism, and comment is a classic example of fair use. WCAC's arguments to the contrary range from weak to absurd, and seem designed not to genuinely persuade the Court that Channel 781's excerpts were infringing—especially on a motion to dismiss—but rather to buttress its assertion that it could not possibly have known otherwise. A dismissal based on this approach would render Section 512(f) essentially meaningless; any rightsholder could dismiss a claim by trumping up some implausible theory of infringement.

A. **Factor 1 Clearly Favors Fair Use Because Channel 781's Use of the Excerpts Is Critical, Noncommercial, Aids Accessibility, and Is Distinct From WCAC's Use.**

The first factor in the fair use analysis "focuses on whether an allegedly infringing use has a further purpose or different character, which is a matter of degree, and the degree of difference must be weighed against other considerations, like commercialism." *Andy Warhol Foundation for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 525 (2023); *Larson v. Dorland*, 693 F. Supp. 3d 59, 79 (D. Mass. 2023).

Channel 781's use of clips from WCAC's content is undisputedly non-commercial, which tilts this factor sharply towards fair use. *Google*, 593 U.S. at 32 ("There is no doubt that a finding that copying was not commercial in nature tips the scales in favor of fair use.").

Channel 781's use is also transformative and fully justified. As alleged in the Complaint, Channel 781 repurposes short clips from WCAC's lengthy recordings to critique, comment on, and highlight important discussions in city government meetings. Complaint (ECF No. 1) ¶ 27 ("Cmplt."). Thus, it uses the excerpts for purposes of criticism and commentary, core examples of fair use under § 107 of the Copyright Act. *Warhol*, 598 U.S. at 530; 17 U.S.C. § 107; *see generally Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578–79 (1994)(fair use permits copyrighted materials to be used for, *inter alia,* criticism, comment, and news reporting).

This use involves far more than verbatim copying. WCAC Br. (ECF No. 17) 2. Rather than simply reproducing WCAC's raw videos, Channel 781 carefully selects and highlights specific and newsworthy discussions, placing them in a larger context. Cmplt. ¶¶ 22, 27. It adds provocative titles, and occasionally editorial descriptions, that highlight aspects of the

discussions. Cmplt. Appendix D.[1] This editorial process gives those excerpts a new function and value, distinct from WCAC's ministerial documenting of the meetings. *See Seltzer v. Green Day, Inc.,* 725 F.3d 1170, 1177 (9th Cir. 2013)(use of artwork in a different context supports fair use because it conveyed "new information, new aesthetics, new insights and understandings"); *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 608–12 (2d Cir. 2006)(repurposing materials for a new function or audience supports a fair use defense); *Fuentes v. Mega Media Holdings, Inc.,* No. 09-22979-CIV, 2011 WL 2601356, at *10 (S.D. Fla. June 9, 2011)(excerpting scenes from film and presenting them in a new context is transformative).

*Nuñez v. Caribbean Int'l News Corp.*, 235 F.3d 18, 21-23 (1st Cir. 2000) is directly on point. In that case, a newspaper selected three photographs from Miss Puerto Rico's modeling portfolio to accompany a news story discussing a controversy over whether her modeling experience, which included nude and semi-nude images, should disqualify her from representing Puerto Rico. The court held that the use was transformative because while the original portfolio was intended to promote the model's career, the newspaper's purpose was purely informative.

The same holds true here, and the fact that both WCAC and Channel 781 aim to inform the public, WCAC Br. 9–10, does not change the analysis. *See Google*, 593 U.S. at 30 ("in determining whether a use is 'transformative,' we must go further and examine the copying's more specifically described 'purpose[s]' and 'character.'"). *American Society for Testing & Materials v. Public.Resource.Org, Inc.*, 82 F.4th 1262, 1267-68 (D.C. Cir. 2023), offers persuasive guidance on this point. In that case, a nonprofit, Public.Resource.Org, purchased

---

[1]  The Complaint incorporates by reference the descriptive content of the YouTube webpages at the URLs listed at Exhibit D.  *Pension Tr. v. J. Jill, Inc.*, 360 F. Supp. 3d 17, 22 (D. Mass. 2018) (in deciding motion to dismiss, "[t]he Court 'may augment these facts and inferences with data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice.'") (citing *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011)).

privately-developed standards that had been incorporated into law and made them available online, for free, in order to facilitate public access to and understanding of the law. The standards developers, which sold the standards and made them available subject to certain restrictions, argued that both parties sought to inform the public. The Court of Appeals for the D.C. Circuit held that factor one strongly favored fair use:

> The plaintiffs seek to advance science and industry by producing standards reflecting industry or engineering best practices…[by contrast] Public Resource's mission in republishing the standards is very different—to provide the public with a free and comprehensive repository of the law.

*Id.* at 1268.

WCAC's and Channel 781's methods and purposes are fundamentally different: WCAC's MAC-TV channel performs the rote function of broadcasting entire city meetings without commentary, whereas Channel 781 uses selected clips to provoke public discussion and critique, providing a critical lens on matters of local importance. Cmplt. ¶¶ 22, 23, 24, 27. Like the newspaper in *Nuñez*, Channel 781 reframes the original material to focus on key community issues, adding commentary that the original videos lack.

Here, moreover, the parties' respective affiliations underscore their distinct missions. *Larson*, 693 F. Supp. 3d at 80 ("[A]n allegedly infringing work is critical of an original work is a strong indication that the two artists had diverging motivations in creating their respective pieces, a fact that also weighs in favor of transformative use."). WCAC is closely affiliated with the municipal government and promotes governmental transparency. Cmplt. ¶¶ 17, 21. Channel 781 is an entirely independent news site that scrutinizes and comments on the city government and its conduct. Cmplt. ¶¶ 10, 13, 27.

Finally, Channel 781's inclusion of captions improves accessibility, a public service that WCAC's broadcasts do not offer. Cmplt. ¶ 24; *Authors Guild v. HathiTrust*, 755 F.3d 87, 102

(2d Cir. 2014)("providing access to the print-disabled is still a valid purpose under Factor One even though it is not transformative."); *see also Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 455 n.40 (1984). The captions on Channel 781's excerpts extend the reach and utility of the government meeting videos, promoting the public interest in accessibility of local government affairs to all community members.

Given Channel 781's distinct journalistic, critical, and noncommercial purpose, as well as its important contribution to accessibility, factor one overwhelmingly favors fair use.

**B.    Factor 2 Clearly Favors Fair Use Because Gavel-to-Gavel Meeting Videos Are Highly Factual Works with Little or No Creative Input by WCAC.**

The second fair use factor—the "nature of the copyrighted work"—considers whether a work is more or less creative, and whether it has been published. *Nuñez*, 235 F.3d at 23 ("Courts have generally considered two aspects of the work in evaluating this factor: first, the extent to which it is a creative work enjoying broader copyright protection as opposed to a factual work requiring broader dissemination, ... and second, whether it is unpublished, in which case the right of first publication is implicated."); *Larson*, 693 F. Supp. 3d at 80-81.

With respect to the former, WCAC correctly notes that it does not own the words spoken at city meetings. WCAC Br. 11. WCAC claims that its choice of camera angles reflects "editorial choices," *Id.* at 4, but does not support that claim with reference to the actual videos at issue. Instead, it points to a "recent meeting"—one that occurred over a year after the works at issue were recorded. *Id.* In any event, even assuming WCAC referred to an actual video at issue, selecting camera angles based on the speaker is the most obvious "editorial choice" imaginable. *See generally Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 363 (1991)(the "unoriginal" decision to organize a telephone directory alphabetically did not give rise to copyright protection). The nearly complete absence of creative input added to an abundance of

6

uncopyrightable facts makes WCAC's copyright in the meeting videos exceedingly "thin" at best. *Google*, 593 U.S. at 21. Given Channel 781's obviously transformative purpose, WCAC's minimal creative contributions can have no meaningful impact on the fair use analysis. *See Fox News Network, LLC v. TVeyes, Inc.*, 883 F.3d 169, 178 (2d Cir. 2018)(where use was even "modest[ly] transformative," second factor "plays no significant role").

Further, even assuming that the recordings embody creative expression, neither Channel 781 nor its audience seek to benefit from it. *See e.g. American Institute of Physics v. Winstead PC*, No. 3:12–CV–1230, 2013 WL 6242843, at *5 (N.D. Tex. Dec. 3, 2013)(where a document is used for an evidentiary purpose, its expressive content is "merely incidental"); *Bill Graham Archives*, 448 F.3d at 612 (where artwork is reproduced as "historical artifacts," its creative content "has limited weight"). They are interested in the clips because of the facts contained therein, not any editorial choice WCAC purportedly made.

With respect to publication, WCAC concedes that the recordings are published, but insists this factor nonetheless leans against fair use because it sought to control *further* uses of them (as opposed to first publication). WCAC Br. 12. This is nonsensical. The fact that a rightsholder has threatened to punish unapproved uses is irrelevant; fair uses are always non-infringing and therefore no "legal steps" are appropriate.

Factor Two favors fair use.

**C.    Factor 3 Clearly Favors Fair Use Because Channel 781 Used Only As Much of the Videos As Necessary to Further its Transformative Purpose.**

WCAC's challenge on the third factor misconstrues both the allegations at issue and the law. Factor 3 favors fair use where the amount of the original work used is "reasonable in relation to the purpose of the copying." *Campbell*, 510 U.S. at 586. In other words, it asks whether the challenged use "employs more of the copyrighted work than is necessary, and

7

whether the copying was excessive in relation to any valid purposes asserted under the first factor." *HathiTrust*, 755 F.3d at 96.

Here, Channel 781 excerpted precisely what was necessary to fulfill its purpose of news reporting and commentary. Most of the excerpts at issue were short by any metric – just 1-5 minutes long. Cmplt. Ex. D. The gavel-to-gavel recordings from which they were excerpted are much longer. For example, the March 6, 2023 meeting of the Waltham City Council from which many of the excerpts at issue were taken lasted 2 hours and 25 minutes.[2] Decades of fair use case law suggest that factor three must favor fair use in these circumstances. *See, e.g., Nuñez*, 235 F.3d at 24 (even though the entire picture of a model was copied for a news story, court found fair use and said "to copy any less than that would have made the picture useless to the story); *Wright v. Warner Books, Inc.,* 953 F.2d 731 (2d Cir. 1991); *SOFA Ent., Inc. v. Dodger Prods., Inc.*, 709 F.3d 1273, 1279 (9th Cir. 2013)(use of 7 seconds from the Ed Sullivan Show in the film "Jersey Boys" was fair use); *Religious Tech. Ctr. v. Lerma*, 908 F. Supp. 1353 (E.D. Va. 1995)(factor three favors fair use where newspaper used three brief quotations from Church of Scientology texts posted on the Internet, for purposes of news commentary).

The same holds true even for the two longer excerpts that WCAC highlights, particularly on a motion to dismiss in which the Court must take the allegations as true and weigh all plausible inferences in Channel 781's favor. *Parmenter,* 93 F.4th at 18. It is entirely plausible that, as alleged, Channel 781 only excerpted what was necessary to further its transformative purposes of news reporting and commentary. No more is required at this stage of the case.

---

[2] *See* "Committee of the Whole—Minutes of the Meeting" (March 6, 2023), *available at* https://www.city.waltham.ma.us/sites/g/files/vyhlif12301/f/minutes/cow_minutes_3-6-2023.pdf. Channel 781 respectfully requests that the Court take judicial notice of this government record. *See Schubert v. City of Rye*, 775 F. Supp. 2d 689, 696 n.3 (S.D.N.Y. 2011)("[T]he minutes and recordings of the City Council meetings are matters of public record and therefore are the types of materials of which a court may take judicial notice."); *Haley v. City of Boston,* 657 F.3d 39, 46 (1st Cir. 2011).

*Monsarrat v. Newman*, 28 F.4th 314, 324 (1st Cir. 2022)("Even verbatim copying can constitute fair use if it is 'consistent with or [no] more than necessary to further the purpose and character of the use'").

Recognizing the weakness of its argument about length, WCAC pivots to the "heart of the work" theory first articulated in *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539 (1985). WCAC argues that since the Factor 3 analysis considers both the quality and the quantity of the material used, the use of "interesting" material, must weigh against fair use. WCAC Br. 12–13. WCAC is wrong, for at least three reasons.

*First*, WCAC's interpretation cannot be squared with Section 107's specific embrace of news reporting as an exemplary fair use. On that theory, Factor 3 would weigh against virtually every fair use by every news organization, the New York Times to Entertainment Tonight. They will naturally choose to highlight the portions of recorded events that are most salient to their coverage and interesting to their audience. Most citizens have neither time nor interest in watching or attending entire city meetings; Channel 781 does it for them and, like any news organization, reports on moments it believes to be newsworthy or otherwise important and interesting to its viewers.

*Second*, the heart of the work doctrine is based on the notion that even a small taking can harm a copyright owner—if the portion taken is precisely what others might pay for. *Harper & Row*, 471 U.S. at 565-66. In *Harper & Row,* a publisher had negotiated a prepublication agreement with Time magazine for the right to excerpt 7,500 words from President Ford's account of his pardon of former President Richard Nixon. An unauthorized source leaked the manuscript to a rival news magazine, The Nation, which published an article including a much smaller set of excerpts, also on the topic of the pardon, i.e., "the part most likely to be

newsworthy and important in licensing serialization." *Campbell*, 510 U.S. at 587. Time cancelled the article and withheld payment of an outstanding licensing fee, significantly affecting the publishers' market for the book. The Court held The Nation's use was unfair, in part because the defendant took the "highly expressive core" of the original work, with "the *intended purpose* of *supplanting* the copyright holder's commercially valuable right of first publication." *Harper & Row*, 471 U.S. at 562.

The facts alleged here could hardly be more different. Channel 781 posted short excerpts from already published recordings of full government meetings, so by definition it did not undermine any right of first publication (assuming that right is even "commercially valuable" here). Those excerpts, also by definition, are not the "highly expressive core" of anything—the original recordings are barely expressive in the first place. Anything "interesting and moving" about the excerpts comes from the elected officials and other speakers at the meetings, not WCAC. Channel 781's "overriding purpose here was not to 'scoop' [WCAC] or 'supplant the copyright holder's commercially valuable right of first publication,' but rather simply to deliver newsworthy…information." *Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 83 (2d Cir. 2014).

*Finally*, the qualitative importance of the portion taken does not displace the "reasonable necessity" rule. As the Court noted in *Campbell*, "context is everything, and the question of fairness asks what else the [secondary user] did besides go to the heart of the original." The question is still whether *'the amount of copying was tethered to a valid, and transformative, purpose.' See Google*, 510 U.S. at 586–87; *see also Tresóna Multimedia, LLC v. Burbank High Sch. Vocal Music Ass'n*, 953 F.3d 638, 650 (9th Cir. 2020)(factor 3 favored fair use even where qualitatively important excerpts were taken because the secondary use was necessary to serve a

transformative purpose).  As demonstrated above, the transformational purpose of the excerpted videos is to critique, comment on, and highlight important discussions in the Waltham city government meetings and to make those discussions more accessible to the public. Cmplt. ¶ 27.

Factor 3 favors fair use.

### D.    Factor 4 Clearly Favors Fair Use Because Channel 781's Excerpts Did Not and Could Not Affect WCAC's Market.

The fourth factor also clearly favors fair use, for reasons well known to WCAC as well as anyone else who had bothered to actually consider whether Channel 781's activities were protected by Section 107.

*First*, because Channel 781's use was noncommercial and transformative, market harm cannot be presumed and is in fact unlikely. *Campbell,* 510 U.S. at 591 ("No 'presumption' or inference of market harm…is applicable to a case involving something beyond mere duplication for commercial purposes."); *Elvis Presley Enters., Inc. v. Passport Video*, 349 F.3d 622, 631 (9th Cir. 2003)("The more transformative the new work, the less likely the new work's use of copyrighted materials will affect the market for the materials.").

*Second*, people seeking information about specific issues affecting Waltham are not the same audience as people seeking comprehensive records of city meetings, so Channel 781's use of the clips could not plausibly affect WCAC's viewership. Even if it did, it is not plausible to infer that anyone watched Channel 781, rather than WCAC, because of the clips themselves as opposed to the quality of Channel 781's reporting, interviews, editorials and other content. *Monsarrat v. Newman*, 28 F.4th 314, 325 (1st Cir. 2022)("[I]f we deemed that the mere copyright endows a work with intrinsic value sufficient to weigh significantly in the fair use analysis, such a value would be present in every case, and thus prove to be largely beside the point in differentiating one case from another.").

*Third*, WCAC cannot claim harmful effects on a market that does not exist. WCAC's funding is based on a percentage of cable subscription revenue, not from licensing its recordings or portions thereof, nor on its viewership. Cmplt. ¶ 19. *See Wright,* 953 F.2d at 739 (affirming district court's finding of no reasonable likelihood of injury to alleged market where, *inter alia*, alleged potential market was "highly improbable"); *Princeton Univ. Press v. Mich. Document Servs., Inc.,* 99 F.3d 1381, 1387 (6th Cir. 1996)("Only 'traditional, reasonable, or likely to be developed markets' are to be considered in this connection…" (citation omitted)); *see also Kane v. Comedy Partners,* No. 00 Civ. 158 (GBD), 2003 WL 22383387, at *7 (S.D.N.Y. Oct. 16, 2003)(to avoid danger of circularity, copyright owner not entitled to license fees for uses that otherwise qualify as fair uses).

Finally, WCAC's claim of market harm based on losing the ability to control distribution, WCAC Br. 14, is entirely circular. *Nuñez,* 235 F.3d at 24 ("[T]o the extent that the copying damages a work's marketability by parodying it or criticizing it, the fair use finding is unaffected."); *Ringgold v. Black Ent. Television, Inc.*, 126 F.3d 70, 81 (2d Cir. 1997)(avoiding the problem of circularity by considering only "traditional, reasonable, or likely to be developed" markets). Under the Copyright Act, the rights enumerated in Section 106 are always subject to the limits of Section 107. 17 U.S.C 107 ("Notwithstanding the provisions of sections 106 and 106A, the fair use of a copyrighted work…is not an infringement of copyright.").

Factor 4 favors fair use.

## II.   CHANNEL 781 ALLEGES AN ACTIONABLE MISREPRESENTATION UNDER 17 USC § 512(F).

Section 512 requires those sending a takedown notice to affirm a "good faith belief" that the material they claim is infringing is not "authorized by…the law." 17 U.S.C. § 512(c), and provides for liability if they proceed without such a belief. *Id.* § 512(f). To deter misuse of the

powerful self-help mechanism Congress gave to copyright holders, these provisions require a

rightsholder's assertion of good faith to be reasonable, a requirement that WCAC, as alleged, did

not meet. But even if this Court follows the Ninth Circuit and applies a subjective standard for

good faith, the Court should still deny WCAC's motion because, as described in the Complaint,

WCAC never formed a subjective belief that Channel 781's excerpts were not fair use. *See Lenz*

*v. Universal Music Corp.* 815 F.3d 1145, 1154 (9th Cir. 2016).

A.      **The DMCA Requires Copyright Owners to Consider Fair Use Before Sending a Takedown Notice**

1.      **Section 512(f) Is Designed to Inhibit Abuse of Copyright Law To Shut Down Lawful Speech, Including Fair Uses.**

Section 512 of the Digital Millennium Copyright Act ("DMCA") is one of the most

important provisions of federal Internet law. Congress designed the DMCA to give rightsholders,

service providers and users clear "rules of the road" for policing online copyright infringement.

The center of the scheme is the notice and takedown process. In exchange for substantial

protection from liability for the actions of their users, service providers must promptly take

offline any content on their platforms that has been identified as infringing, as well as several

other prescribed steps. *See* 17 U.S.C. § 512. Copyright owners, for their part, are given an

expedited, extra-judicial procedure for obtaining redress against alleged infringement, paired

with explicit statutory guidance regarding the process for doing so, and provisions designed to

deter and ameliorate abuse of that process. *See id*. § 512(c)(3)(A).

But Congress knew that Section 512's powerful incentives could result in lawful material

being censored from the Internet without prior judicial scrutiny. As the Senate Report on Section

512(f) explained,

> The Committee was acutely concerned that it provide all end-users…with
> appropriate procedural protections to ensure that material is not disabled without
> proper justification. The provisions in the bill balance the need for rapid response

to potential infringement with the end-users['] legitimate interests in not having material removed without recourse.

S. REP. NO. 105-190 at 21 (1998). Those concerns turned out to be well-founded; the DMCA is regularly abused to target lawful speech. *See* Jennifer M. Urban, Joe Karaganis & Brianna L. Schofield, *Notice and Takedown in Everyday Practice,* 12 (March 29, 2016)[3] (finding that seven percent of DMCA takedown notices targeted potential fair uses).

　　To deter abuse, Congress ensured that the DMCA included a series of checks and balances. First, it included Section 512(c)(3), which sets out clear rules for asserting infringement under the DMCA. Second, it included Section 512(g), which creates a counter-notice process that allows for restoration. Third, it included Section 512(f), which gives users the ability to hold rightsholders accountable if they send a DMCA notice in bad faith. Section 512(f) creates a cause of action against "[a]ny person who knowingly materially misrepresents under this section [i.e., under Section 512] – (1) that material or activity is infringing, or (2) that material or activity was removed or disabled by mistake or misidentification."[4] Section 512(f) refers to Section 512(c)(3), which outlines the specific affirmations required to allege infringement under the DMCA. *See id*. § 512(c)(3)(A). A mere statement that material is "infringing" does not suffice; to allege infringement under the DMCA, the complaining party must state that it "has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, *or the law*." *Id.* § 512(c)(3)(A)(v)(emphasis added). Taken together, Sections 512(c) and (f) deter improper notices: 512(c) by requiring a

---

[3]  Available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2755628.

[4]  WCAC misquotes both the Complaint and the statute as "knowingly intentionally misrepresent[ing]." WCAC Br. 6. The standard is "knowingly materially misrepresent[ing]," 17 U.S.C. § 512(f); Cmplt. ¶ 52. "Materially" means only that the allegedly infringing material was taken down in reliance on the representation. *Online Pol'y Grp. v. Diebold, Inc.*, 337 F. Supp. 2d 1195, 1204 (N.D. Cal. 2004).

notice sender to properly consider whether its notice targets actual infringement; 512(f) by imposing a penalty if its fails to do so.

> **2.    The Ninth Circuit Court of Appeals Correctly Interpreted Section 512 to Require Rightsholders to Consider Whether a Use Was Lawful Under Section 107 Before Sending a Takedown Notice.**

Given the paucity of Section 512(f) caselaw in this circuit, WCAC asks the Court to look instead to the Ninth Circuit for guidance. Channel 781 agrees, but only to the extent that guidance is persuasive. *See United States v. Tavares*, 705 F.3d 4, 20 (1st Cir. 2013). Specifically, the Court should follow the Ninth Circuit's ruling in *Lenz v. Universal Music Corp.* that where a notice-sender did not consider whether the targeted use was a lawful fair use, it did not form a good faith belief that the use was unauthorized, and representing otherwise in a takedown notice pursuant to § 512(c) is a knowing, material misrepresentation. 815 F.3d at 1154.[5]

*Lenz* concerned a mother's short video, uploaded to YouTube, of her two young children dancing while a song by the artist Prince played in the background. *Id.* at 1149. Universal Music, which enforced Prince's copyrights, sent a takedown notice to YouTube, causing the site to remove the video. *Id.* at 1149–50. Universal's evaluation focused on the prominence of the song within the video but did not consider whether Ms. Lenz's use of the song was a fair use. *Id.*

As noted, a takedown notice must include a "statement that the complaining party has a good faith belief that the use of the material in the manner complained of is not authorized by the copyright owner, its agent, *or the law*." 17 U.S.C. § 512(c) (emphasis added). Fair use, the Ninth Circuit reasoned "is not just excused by the law, it is wholly authorized by the law," *Id.* at 1151-

---

[5]  WCAC cites to an earlier district court ruling in the *Lenz* litigation that was cited in turn by the only district court in this Circuit to consider Section 512(f), in *Tuteur v. Crossley-Corcoran*, 961 F. Supp. 2d 333 (D. Mass. 2013); WCAC Br. 16-17. Both decisions predate the Ninth Circuit's ultimate guidance on the relationship between Sections 512 and 107 of the Copyright Act.

53. Thus, a rightsholder who fails to consider whether a use is fair cannot form a subjective

"good faith belief" that the use is not "authorized by...the law." *Id.* at 1154.

> **3.     The Ninth Circuit Incorrectly Interpreted Section 512(f) to Require Subjective Knowledge that the Targeted Use Was Fair.**

However, this Court should reject the Ninth Circuit's incorrect holding that Section

512(f) liability turns on *subjective* knowledge that a use was lawful. *Rossi v. Motion Picture*

*Ass'n of Am. Inc.,* 391 F.3d 1000, 1004 (9th Cir. 2004). If the sender of an improper takedown

cannot be liable under Section 512(f) no matter how unreasonable its belief, that approach

effectively eliminates Section 512(f) protections for even classic fair uses upon which creators

rely. *Lenz,* 815 F.3d at 1160 (M. Smith, J., dissenting) (concluding that the Ninth Circuit's

"construction eviscerates § 512(f) and leaves it toothless against frivolous takedown notices").

For example, some rightsholders unreasonably believe that virtually all uses of

copyrighted works must be licensed. Fair use exists, in significant part, to make sure such beliefs

don't thwart new creativity or suppress important criticism. Allowing a copyright owner to hide

behind unreasonable beliefs undermines this crucial protection for online expression. By

contrast, requiring a rightsholder to form a *reasonable* good faith belief as to whether the use she

is targeting is unlawful or not comports perfectly with Congress's intent to "ensure that material

is not disabled without proper justification." S. REP. NO. 105-190 at 21 (1998).

Moreover, the Ninth Circuit's holding in *Rossi v. Motion Picture Association of America*

*Inc.,* upon which its later analysis of the DMCA relied, was based on an inapposite and unusual

set of facts. 391 F.3d at 1004. Michael Rossi ran a website that promised subscribers

downloadable movies. *Id.* at 1002. Based on Rossi's express representations, the MPAA

reasonably concluded that he was infringing its members' copyrights. *Id.* at 1002-03. As it

happened, Rossi was lying to his own subscribers—he offered no movies. *Id.* at 1003. Thus, it

made no difference in *Rossi* whether an unreasonable belief could be a "good faith" belief. But that holding has been and remains consequential for other users and rightsholders who want to avoid DMCA abuse.

The Ninth Circuit's statutory interpretation is also incorrect. The statute requires a statement that the notice-sender have "a good faith *belief*" that the use is not authorized. 17 U.S.C. § 512(c)(3)(A)(v)(emphasis added). The word "belief," on its own, already requires a subjective state of mind; if *any* subjectively held viewpoint is a "good faith belief," the words "good faith" become superfluous. Context demands that the phrase "good faith belief" requires a subjectively held viewpoint (a belief) that is also reasonable (in good faith), even if it is wrong. This means that a representation of a good faith belief is a "knowing misrepresentation" actionable under Section 512(f) if it is *either* not subjectively held (there is no "belief") *or* unreasonably held (the belief is not held in "good faith"). *See Cooper v. Schlesinger,* 111 U.S. 148, 155 (1884)1 ("[A] statement recklessly made, without knowledge of its truth, [is] a false statement knowingly made, within the settled rule.").

### B. This Court Should Apply an Objective Test to § 512(f) and Hold that WCAC, As Alleged, Acted Unreasonably.

As a cause of action enacted to protect users' speech, Section 512(f) should be construed broadly to ensure that it provides users with the recourse Congress intended. *See Tcherepnin v. Knight*, 389 U.S. 332, 336 (1967); 3 Norman J. Singer, SUTHERLAND STATUTORY CONSTRUCTION § 60.02 (7th ed. 2014). In many cases, a reviewer will be confronted with facts that make the legal conclusion of infringement simple. In other instances, as here, a reviewer will be confronted with facts that make the legal conclusion of non-infringement equally simple. As for the edge cases, where it is not immediately clear whether the use is lawful or not, the reviewer is obligated only to form a reasonable belief—one that is defensible, even if it turns out

to be incorrect. *See Zaldivar v. City of Los Angeles*, 780 F.2d 823, 831 (9th Cir. 1986)(a good faith belief "need not be correct," but it must "be defensible").

WCAC's notice was not defensible.  Rather, this case is a paradigmatic example of the abuse that Congress sought to curb with Section 512(f). As explained above, posting short video clips containing the purely factual record of government meetings to inform the public and further debate on particular issues while also making them accessible to a broader audience is a clear fair use. WCAC acted unreasonably when it sent takedown notices to censor these uses solely based on its desire to suppress critics of the city government. Cmplt. ¶¶ 28, 37, 40, 41. WCAC reasonably should have known that the clips were not infringing based on the context of their use, and its representation to the contrary was not reasonable and therefore not made in good faith. Cmplt. ¶ 56.

Accordingly, Channel 781 has stated a claim under Section 512(f), and the Court should dismiss WCAC's motion.

### C.    Even If This Court Applies the Ninth Circuit Subjective Test to § 512 (f), Channel 781 Has Stated a Claim for Misrepresentation.

If this Court nonetheless applies the Ninth Circuit's subjective test, the Court should still dismiss WCAC's motion.  Channel 781 has amply alleged that WCAC lacked a subjective good faith belief that use of the meeting video excerpts was infringing.

### 1.    Channel 781 Properly Plead WCAC's Failure to Consider Whether Channel 781's Use of the Excerpted Clips Constituted Fair Use

Channel 781's Complaint, taken as true, alleges that WCAC did not consider whether Channel 781's use of the meeting video clips was a fair use. Cmplt. ¶ 55. Ample allegations of fact support this. The April 2023 on-air statement by WCAC's executive director Maria Sheehan asserted that *every* use of public meeting videos ("videos from the MAC channel") required explicit permission from WCAC—an implicit statement that fair use never applies. Cmplt. ¶ 28.

Ms. Sheehan also implied that WCAC would deny permission for uses that, in WCAC's judgment, attempt to "spread misinformation" or "score political points"—criteria entirely unrelated to a fair use analysis. Ms. Sheehan also maintained this position when speaking on behalf of WCAC in her communications with Channel 781's Mr. Kastorf. Cmplt. ¶¶ 31–33. At no time did Ms. Sheehan and WCAC state that they had considered whether Channel 781's specific uses constituted fair use.

These allegations are more than sufficient to state a claim of knowing misrepresentation under the Ninth Circuit's standard. "[W]hether a copyright owner formed a subjective good faith belief is, in most instances, a factual issue that is not appropriate for resolution on a motion to dismiss." *MFB Fertility, Inc. v. Action Care Mobile Veterinary Clinic, LLC*, No. 23 CV 3854, 2024 WL 1719347, at *7 (N.D. Ill. Apr. 22, 2024); *see Weinberg v. Dirty World, LLC*, No. CV 16-9179-GW(PJWX), 2017 WL 5665022, at *5 (C.D. Cal. Apr. 24, 2017); Fed. R. Civ. P. 9(b)("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.").

> **2.    Channel 781's Complaint Properly Alleges WCAC's "Knowing Misrepresentation" Based on Its Application of Criteria Incompatible with Fair Use**

In addition, allegations that a rightsholder applied different criteria, incompatible with fair use, to its decision to send a takedown, demonstrate a failure to consider fair use. *See Lenz v. Universal Music Corp.,* 572 F. Supp. 2d 1150, 1156 (N.D. Cal. 2008)(denying motion to dismiss because, inter alia, "Lenz also alleges that Universal acted to promote Prince's personal agenda and that its actions 'ha[ve] nothing to do with any particular [YouTube] video that uses his songs.'"); *Shande v. Zoox, Inc.,* No. 22-CV-05821-BLF, 2024 WL 2306284, at *4 (N.D. Cal. May 21, 2024)(denying motion to dismiss based on allegation that defendant's "real concern" was preventing any re-use of copyrighted work by a competitor).

Courts have also found "knowingly" to extend to constructive knowledge in a number of contexts, particularly where, as here, a civil provision has a remedial purpose. *See e.g., Freeman United Coal Min. Co. v. Fed. Mine Safety & Health Review Comm'n*, 108 F.3d 358, 363 (D.C. Cir. 1997)(noting that the term can "include 'actual knowledge,' 'deliberate ignorance,' and 'reckless disregard.'"); *United States v. Spinney*, 65 F.3d 231, 236 (1st Cir. 1995)("'knowledge' means different things in different contexts" so "it is useful to view the concept as a continuum").

Channel 781's allegations rise above a "mere disagreement" over whether fair use applies, as WCAC argues. WCAC Br. 2. They show, instead, that WCAC did not consider fair use at all, even after being asked to do so by Mr. Kastorf. WCAC also misstated the legal standard. Channel 781 is not required to "plead [] facts plausibly showing that Ms. Sheehan subjectively agreed that the copying of WCAC Content was indubitably a fair use." WCAC Br. 18. Neither *Rossi* nor *Lenz* requires such a specific showing.[6]

---

[6] This Court should not rely on *Tuteur v. Crossley-Corcoran*, 961 F. Supp. 2d 333 (D. Mass. 2013), as WCAC suggests. The *Tuteur* decision applies the Ninth Circuit's holding in *Rossi* without the benefit of the subsequent analysis in *Lenz*, which WCAC fails to cite. *Tuteur* conflicts with the Ninth Circuit's later reasoning that fair use is "wholly authorized by the law," such that a rightsholder must consider fair use before sending a takedown notice.

## CONCLUSION

For the reasons stated above, the Court should deny Defendant WCAC's motion to dismiss.

Dated: October 3, 2024                        Respectfully submitted,

 */s/ Rebecca MacDowell Lecaroz*
Rebecca MacDowell Lecaroz
Marcus Strong (*admitted pro hac vice*)
Brown Rudnick LLP
One Financial Center
Boston, MA 02111
Tel: (617) 856-8200
rlecaroz@brownrudnick.com

Mitchell L. Stoltz (*admitted pro hac vice*)
Betelhem Zewge Gedlu (*admitted pro hac vice*)
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, CA 94109
Telephone: (415) 436-9333
Facsimile: (415) 436-9993
mitch@eff.org
betty@eff.org

*Attorneys for Plaintiff Channel 781 News*

## CERTIFICATE OF SERVICE

I hereby certify that the within document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and by first-class mail to any non-registered participants.

Dated: October 3, 2024                     */s/ Rebecca MacDowell Lecaroz*
                                            Rebecca MacDowell Lecaroz