UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHANNEL 781 NEWS, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 1:24-CV-11927-PBS |
| WALTHAM COMMUNITY ACCESS CORPORATION, | ) |
| | ) **Leave to File Granted on October 29, 2024** |
| Defendant. | ) |

**DEFENDANT WALTHAM COMMUNITY ACCESS CORPORATION'S
REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

Plaintiff Channel 781 News has failed to state a claim that the Waltham Community Access Corporation ("WCAC") made a "misrepresentation" under the Digital Millennium Copyright Act, 17 U.S.C. § 512(f) ("DMCA"). As explained below, the statute does not require rights-holders to engage in legal analysis of the thorny question of fair use before submitting a takedown notice. Even if it did, however, plaintiff has not plausibly alleged that WCAC failed to consider the doctrine. To the contrary, plaintiff alleges that before WCAC's Executive Director, Maria Sheehan, issued the takedown notices, she had a meeting with a representative of the plaintiff, who argued that its use of clips of government meeting videos was fair use. Plaintiff pleads no facts showing that Sheehan or WCAC failed even to consider those arguments. Nor has it pleaded any other facts showing a "knowing[]" and "material[]" misrepresentation under 17 USC § 512(f), as required. Accordingly, the motion should be allowed.

A.   **THE DMCA DOES NOT REQUIRE A COPYRIGHT HOLDER TO WARRANT THAT THE INFRINGER'S UNLICENSED USE OF ITS CONTENT IS NOT SUBJECT TO THE AFFIRMATIVE DEFENSE OF FAIR USE.**

To submit a takedown notice under the DMCA, a copyright holder must, among other things, identify the infringed work, the infringing material, and the alleged infringer, and it must provide "[a] statement that the complaining party has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law." 17 U.S.C. § 512(c). The statute does not "require that a notice-giver verify that he or she had explored an alleged infringer's possible affirmative defenses" to copyright infringement before sending a takedown notice. *Tuteur v. Crosley-Corcoran*, 961 F. Supp. 2d 333, 343 (D. Mass. 2013). Fair use is an affirmative defense, for which the infringer bears the burden of proof. *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994); *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 561 (1985). "As an affirmative defense, fair use serves to excuse a use that otherwise is infringing, <u>not to create an affirmative right of use</u>." *Tuteur,* 961 F. Supp. 2d 343 (quoting brief of MPAA with approval) (emphasis supplied). Accordingly, the notice-giver who certifies that she has a good faith belief that copying is not "authorized by . . . the law" does not impliedly warrant that the fair use affirmative defense is legally unavailable, on penalty of liability for "misrepresentation." *Id.* at 343-344.

In its opposition brief, plaintiff inadvertently illustrates why this is a good thing. Plaintiff deemed it necessary to submit a full 10 pages of legal argument, citing 24 cases, to show that its verbatim copying of excerpts of WCAC's content was fair use under 17 U.S.C. § 107. (Opposition at 2-12). That briefing is in response to WCAC's eight pages of argument that the use was *not* plausibly alleged to be fair, where plaintiff published the excerpts of WCAC content for similar purposes and did not meaningfully "transform" the content. (Memorandum in Support

at 7-15). The parties' arguments on this question extend to all four "fair use" factors identified in the statute. (*Id.*). If the fairness of plaintiff's use were so "self-evident" as to be the subject of a misrepresentation claim, as plaintiff asserts, why would it need 10 pages of legal argument to support this "self-evident" proposition? (Opposition at 2).

The reason lies in the nature of the "fair use" test itself. "Commentators, including copyright critics, have long lamented the incoherency and unpredictability of the fair use doctrine." Jiarui Liu, "An Empirical Study of Transformative Use in Copyright Law," 22 STAN. TECH. L. REV. 163, 169 (2019). Over the last 30 years, courts have focused on the concept of "transformative use" to try to bring order to the concept, but the project has not necessarily succeeded. *Id.* (finding that while "many judges have apparently arrived at a consensus that only transformative use can rescue fair use, they have achieved hardly any consensus on what transformative use actually means."). This was illustrated in the Supreme Court last term, when the Court split over whether an Andy Warhol silkscreen that used another photographer's portrait of Prince was "transformative" when licensed to a magazine. The majority held that the original photograph and the licensing of the Warhol were both "commercial in nature," so the latter use was not "transformative." Justice Kagan's stinging dissent accused the majority of negating "Warhol's artistry and social commentary" and of threatening the creative process itself. *See generally Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508 (2023).

The malleability of the fair use inquiry is one of the "sound structural and policy reasons" why Congress "did not require that a notice-giver verify that he or she had explored an alleged infringer's possible affirmative defenses" such as fair use prior to sending a DMCA notice. *Tuteur,* 961 F.Supp.2d at 343-344. As Judge Stearns noted in *Tuteur,* the "equitable balancing of multiple factors" inherent in the context-specific doctrine of fair use is fundamentally

incompatible with "Congress's express intent of creating an 'expeditious[ ],' 'rapid response' to 'potential infringement' on the Internet." *Id.* at 344, quoting 17 U.S.C. § 512(c)(i)(A)(iii); S. Rep. 105-190, at 21. Put simply, this fact-intensive, no-bright-line doctrine is not grist for the mill of "misrepresentation."

Congress did not intend rights-holders to have to obtain a legal opinion on fair use from an attorney whenever they submit a takedown notice. Nor did it intend to chill copyright holders from protecting their rights online with the threat of liability for guessing wrong as to whether an infringer could avail himself of a defense. It required only that the rights-holder "affirm a good faith belief that the copyrighted material is being used without her or her agent's permission," which is what WCAC correctly did here. *Tuteur,* 961 F.Supp.2d at 343-344.

**B.   THE COURT SHOULD DECLINE PLAINTIFF'S INVITATION TO REPLACE THE SUBJECTIVE TEST ESTABLISHED IN THE DMCA WITH AN OBJECTIVE ONE.**

The "good faith belief" requirement of Section 512(c)(3)(A)(v) "encompasses a subjective, rather than objective, standard." *Rossi v. Motion Picture Ass'n of Am. Inc.*, 391 F.3d 1000, 1004 (9th Cir. 2004). "When enacting the DMCA, Congress could have easily incorporated an objective standard of reasonableness," but it did not, indicating "an intent to adhere to the subjective standard traditionally associated with a good faith requirement." *Id.*

Notably, every case that plaintiff cites in its brief follows the Ninth Circuit's decision in *Rossi* and applies a subjective test to a claim of misrepresentation under Section 512(f). *See Shande v. Zoox, Inc.,* No. 22-CV-05821-BLF, 2024 WL 2306284 at *3 (N.D. Cal. May 21, 2024) ("a copyright owner cannot be liable simply because an unknowing mistake is made, even if the copyright owner acted unreasonably in making the mistake. . . . Rather, there must be a demonstration of some actual knowledge of misrepresentation on the part of the copyright

4

owner" in submitting the takedown notice. *Id.*"); *MFB Fertility, Inc. v. Action Care Mobile Veterinary Clinic, LLC*, No. 23 CV 3854, 2024 WL 1719347 at *6 (N.D. Ill. Apr. 22, 2024) ("following the Ninth Circuit's lead, courts in this Circuit require plaintiffs to show "actual knowledge," i.e., that the defendants knew that they were making a material misrepresentation in a DMCA takedown notice.")

Notwithstanding that Channel 781 does not cite a single case that applies an objective reasonableness standard to a misrepresentation claim under Section 512, it asks this Court to do so anyway. As *Rossi* suggests, that would effectively re-write the statute. The Court should decline plaintiff's invitation.

C.  **THE COMPLAINT FAILS TO ALLEGE FACTS SHOWING SUBJECTIVE LACK OF GOOD FAITH.**

Plaintiff argues that even under a subjective standard, it has alleged that WCAC did not consider fair use, and that is sufficient to state a claim. (Opposition at 18-20). Plaintiff is mistaken, for three reasons.

*First*, no case in this Circuit holds that a DMCA notice-giver must consider the multi-factor affirmative defense of fair use before it may form a "good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law." 17 U.S.C. § 512(c). As we have explained, *Tuteur* holds to the contrary: that there is no obligation to consider fair use before issuing a takedown notice. *Tuteur*, 961 F. Supp. 2d at 343.

*Second*, even if this Court were to follow the Ninth Circuit and hold that a DMCA notice-giver must "consider fair use before sending a takedown notification," plaintiff's complaint does not plausibly allege that WCAC failed to do so. *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1154 (9th Cir. 2016). If anything, it alleges the opposite. On June 15, 2023, Channel 781's representative, Joshua Kastorf, had a meeting with Maria Sheehan, the Executive Director of

5

WCAC, in which he argued to her that Channel 781's use of the clips was protected by fair use. (Complaint, ¶¶ 29-31). Sheehan did not agree, and after "hearing Mr. Kastorf's explanation that the use of the [clips] was fair use," she said she would nonetheless submit takedown notices for such use of its content. (*Id.*). Kastorf sent Sheehan written materials about fair use, to which Sheehan did not reply. (*Id.,* ¶¶ 35-36). Thereafter, on September 1, 2023, Sheehan sent in the first of the takedown notices, and she sent in others shortly thereafter.[1] (*Id.* ¶ 31) It is difficult to square plaintiff's allegation that Sheehan *heard* Mr. Kastorf's arguments about fair use with its allegation that she nonetheless did not "consider fair use" before sending the notification. *Lenz,* 815 F.3d 1145.

*Third,* the Complaint alleges no basis to find that WCAC acted with "willful blindness" to the applicability of the fair use defense, as plaintiff suggests. (Opposition at 20). To satisfy this standard under the Ninth Circuit's test, plaintiff must allege facts plausibly showing that "before sending the takedown notification," WCAC "(1) <u>subjectively believed</u> there was a high probability that the video constituted fair use, and (2) took <u>deliberate actions</u> to avoid learning of this fair use." *Lenz,* 815 F.3d at 1155 (emphasis supplied). There are no facts pleaded in the Complaint that show either of these elements.[2] *See Byd Co. Ltd. v. All. for Am. Mfg.,* No. 21-7099, 2022 WL 1463866, at *2 (D.C. Cir. May 10, 2022), cert. denied, 143 S. Ct. 306, 214 L.

---

[1] The public statement by Ms. Sheehan on April 6, 2023, quoted in the Complaint, was not an assertion that "*every* use of public meeting videos ('videos from the MAC channel') required explicit permission from WCAC," as plaintiff asserts. (Opposition at 18). Rather, she stated, "I'm asking the public to respect people who work hard to create our original content. In the interest of transparency, we will entertain requests to reuse our content for free, but misuse is wrong, and it is illegal." (Complaint, ¶ 28). Moreover, the statement came before Ms. Sheehan's exchange with Mr. Kastorf about fair use, and long before she submitted the takedown requests in September 2023.

[2] Plaintiff's conclusory assertion that "[o]n information and belief, Defendant had actual subjective knowledge that the Government Meeting Video Clips did not infringe any copyright of Defendant's," is not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 683 (2009) (holding that Fed. R. Civ. P. 8 requires "factual allegation[s] sufficient to plausibly suggest [a culpable] state of mind.")

Ed. 2d 134 (2022) (dismissing defamation claim based on lack of allegations supporting inference of actual malice where no facts supporting "willful blindness" as to probable falsity of the statement were pleaded).

For these reasons, and those explained in WCAC's memorandum of law, the motion to dismiss should be allowed.

Respectfully submitted,

WALTHAM COMMUNITY ACCESS CORPORATION,

By its attorneys,

*/s/ Jeffrey J. Pyle*
Jeffrey J. Pyle (BBO # 647438)
jpyle@princelobel.com
Sarah L. Doelger (BBO # 712677)
sdoelger@princelobel.com
PRINCE LOBEL TYE LLP
One International Place, Suite 3700
Boston, MA 02110
T: 617-456-8000
F: 617-456-8100

Dated: October 29, 2024

## Certificate of Service

I hereby certify that the within document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and by first-class mail to any non-registered participants.

/s/ *Jeffrey J. Pyle*
Jeffrey J. Pyle
