# Exhibit F

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHANNEL 781 NEWS,<br><br>    Plaintiff,<br>v.<br><br>WALTHAM COMMUNITY ACCESS CORPORATION,<br><br>    Defendant. | Civil Action No. 1:24-CV-11927-PBS |

**DEFENDANT WALTHAM COMMUNITY ACCESS CORPORATION'S
ANSWERS AND OBJECTIONS TO PLAINTIFF CHANNEL 781 NEWS'S
<u>FIRST SET OF INTERROGATORIES</u>**

Pursuant to Federal Rule of Civil Procedure 33, Defendant Waltham Community Access Corporation ("WCAC" or "Defendant") hereby responds (each a "Response") to the first set of interrogatories of Plaintiff Channel 781 News ("Channel 781") as follows:

**<u>Preliminary Statement</u>**

WCAC has not yet completed its preparation for trial. WCAC reserves the right to rely on any facts, documents or other evidence that may develop or come to WCAC's attention subsequent to responding to these Interrogatories. WCAC also reserves the right to rely at the time of trial upon documents, Responses, and evidence in addition to those provided or referred to in the Responses regardless of whether, *inter alia*, any such documents and evidence are newly discovered or are currently in existence. Finally, WCAC reserves the right to supplement or alter this initial Response to the Interrogatories.

WCAC's willingness to respond to the Interrogatories is not a concession that the subject matter of the particular Interrogatory is relevant to this action or that it is responsive

1

to a particular issue in this case. Further, any response that WCAC will produce responsive, non-privileged documents is not an admission that any such documents exist or have been located. Instead, any such response should be interpreted as an intention to produce responsive, non-privileged documents to the extent such documents exist and are located after a reasonably diligent search. WCAC preserves all objections as to competency, relevancy, materiality, and admissibility and reserves the right to object to further discovery into the subject matter of any of the Interrogatories.

## OBJECTIONS AND ANSWERS TO INTERROGATORIES

Subject to the Preliminary Statement, which is incorporated into each of the Responses below, and any specific objections set forth herein, WCAC provides the following Responses to Channel 781's Interrogatories:

**Interrogatory No. 1**

IDENTIFY each and every person who provided any information, directly or indirectly, to answer these interrogatories.

**Answer No. 1**

WCAC objects to Interrogatory No. 1 on the ground that its request to identify persons who provided information "indirectly" is vague and ambiguous.

Subject to and without waiving the foregoing objection, WCAC states that Maria Sheehan, Bill Heatly and Chris Wangler provided information used to answer these interrogatories.

**Interrogatory No. 2**

IDENTIFY all copyrighted works You believe were infringed by the VIDEO EXCERPTS AT ISSUE, including without limitation their title, author, date and place of creation, date of first publication, length, and a description of their content.

**Answer No. 2**

WCAC objects to this interrogatory to the extent it seeks information concerning WCAC's current belief or opinion concerning the lawfulness of Channel 781's use of the "VIDEO EXCERPTS AT ISSUE" on the ground that such information is not reasonably calculated to lead to the discovery of admissible evidence in this action, which concerns only WCAC's actions and/or statements surrounding the notices of claimed infringement sent on September 1, 4, and 7, 2023. WCAC further objects to the interrogatory as written on the ground that it seeks disclosure of information subject to the attorney-client privilege and work product protection.

Subject to and without waiving the foregoing objections, WCAC identifies the following videos (hereinafter, the "WCAC Videos") as to which it owns the copyright and from which, on information and belief, Plaintiff made the "VIDEO EXCERPTS AT ISSUE," as defined in Plaintiff's interrogatories.

    1. Title: Committee of the Whole 3/6/2023
    Author: Waltham Community Access Corporation
    Date and place of creation: Waltham, Massachusetts, March 6, 2023
    Date of first publication: March 6, 2023
    Length: 2:24:12
    Description of content: Video recording of March 6, 2023 meeting of Waltham Committee of the Whole.

    2. Title: City Council 5/8/2023
    Author: Waltham Community Access Corporation
    Date and place of creation: May 8, 2023
    Date of first publication: May 8, 2023
    Length: 01:33:28
    Description of content: Video recording of the May 8, 2023 meeting of Waltham City Council.

    3. Title: Public Works & Public Safety Committee 5/15/2023
    Author: Waltham Community Access Corporation
    Date and place of creation: May 15, 2023
    Date of first publication: May 16, 2023
    Length: 00:38:07

Description of content: Video recording of the May 15, 2023 meeting of the Waltham Public Works & Public Safety Committee.

4. Title: Finance Committee Budget Hearings 6/6/2023 (Part 1 of 2)
Author: Waltham Community Access Corporation
Date and place of creation: Waltham, Massachusetts
Date of first publication: June 6, 2023
Length: 02:43:36
Description of content: Video recording of June 6, 2023 Waltham Finance Committee Budget Hearings, DVD 1 of 2.

5. Title: Finance Committee Budget Hearings 6/6/2023 (Part 2 of 2)
Author: Waltham Community Access Corporation
Date and place of creation: Waltham, Massachusetts
Date of first publication: June 6, 2023
Length: 03:43:33
Description of content: Video recording of June 6, 2023 Finance Committee Budget Hearings, DVD 2 of 2.

6. Title: Special City Council 6/20/2023
Author: Waltham Community Access Corporation
Date and place of creation: Waltham, Massachusetts
Date of first publication: June 20, 2023
Length: 00:26:33
Description of content: Video recording of June 20, 2023 Waltham Special City Council meeting.

7. Title: School Committee 7/27/2023
Author: Waltham Community Access Corporation
Date and place of creation: Waltham, Massachusetts
Date of first publication: July 27, 2023
Length: 01:40:44
Description of content: Video recording of the July 27, 2023 School Committee meeting, DVD 2 of 2.

**Interrogatory No. 3**

For each work You identified in Your response to Interrogatory No. 2, DESCRIBE in detail Your creative contributions to the work, including without limitation the selection of camera angles and the inclusion of graphics.

**Answer No. 3**

Pursuant to Fed. R. Civ. P. 33(d), WCAC states that it will produce to the Plaintiff each of the copyright-protected works identified in response to Interrogatory No. 2. Defendant further

states that WCAC personnel are responsible for all creative choices represented in those works, including but not limited to the choice of camera angles, inclusion of graphics, and sound engineering.

**Interrogatory No. 4**

For each work You identified in Your response to Interrogatory No. 2, DESCRIBE in detail the basis for Your alleged belief, at the time You sent the Notices of Claimed Infringement, that the VIDEO EXCERPTS AT ISSUE infringed the copyright in such work.

**Answer No. 4**

WCAC objects to Interrogatory No. 4 to the extent it seeks discovery of legal opinions or conclusions rather than the discovery of facts. Notwithstanding the foregoing objection, WCAC provides the relevant facts known by WCAC at the time of the sending of the notices of claimed infringement that are responsive to Interrogatory No. 4.

Chris Wangler, WCAC's News Director, sent the notices of claimed infringement on behalf of Maria Sheehan, WCAC's Executive Director. At the time he did so, Mr. Wangler understood that WCAC owned the copyright in the WCAC Videos, that WCAC had not licensed any portion of the WCAC Videos to any person associated with the "Waltham DATA" YouTube page, and that WCAC had not otherwise granted any affiliate of the "Waltham DATA" YouTube page any permission to use the WCAC Videos, either directly or through an agent. Mr. Wangler understood at the time of the sending of the notices of claimed infringement that the VIDEO EXCERPTS AT ISSUE consisted solely of excerpts of WCAC Videos for which WCAC owned the copyright. Mr. Wangler understood that Channel 781 had not added any creative elements or commentary, nor had it otherwise changed or transformed the excerpted portions of the WCAC Videos. Mr. Wangler understood that the purpose of Channel 781's use of the VIDEO EXCERPTS AT ISSUE was to inform the public about Waltham city government meetings.

**Interrogatory No. 5**

For each work You identified in Your response to Interrogatory No. 2, DESCRIBE in detail any effect You contend You believed, at the time You sent the Notices of Claimed Infringement, that the purported infringement had, if any, upon the actual market value of the purportedly infringed copyrighted work.

**Answer No. 5**

WCAC states that its personnel did not form any particularized belief at the time of the sending of the notices of claimed infringement as to the "effect" that the "Claimed Infringement" would have on the "market value" of each of the WCAC Videos on a work-by-work basis. Answering further, WCAC states that at the time she authorized the notices to be sent, Maria Sheehan, WCAC's Executive Director, knew that WCAC had previously licensed its content to third parties, including to documentary filmmakers, and that the licensing fees from such agreements had materially contributed to WCAC's non-profit mission. Pursuant to Fed. R. Civ. P. 33(d), WCAC will produce documents relating to such licenses.

**Interrogatory No. 6**

For each work You identified in Your response to Interrogatory No. 2, DESCRIBE in detail any effect You contend You believed, at the time You sent the Notices of Claimed Infringement, that the purported infringement had, if any, upon the potential market value of the purportedly infringed copyrighted work.

**Answer No. 6**

WCAC objects to Interrogatory No. 6 on the grounds that the term "potential market value of the purportedly infringed copyrighted work" is vague and ambiguous. Subject to and without waiving the foregoing objection, WCAC refers plaintiff to its response to Interrogatory No. 5.

**Interrogatory No. 7**

IDENTIFY all facts, Documents, and other information in your possession, custody, or control that support any claim You have that You have attempted to exploit the potential market or markets You identified in your response to Interrogatory No. 6, if any, including the identity of all Persons you believe have knowledge relating to any such attempts.

**Answer No. 7**

WCAC refers the Plaintiff to its responses to Interrogatories 5 and 6, and to the licensing agreements referenced therein.

**Interrogatory No. 8**

DESCRIBE in detail the basis for your contention that Plaintiff "suffered no damages." (Affirmative Defense No. 4)

**Answer No. 8**

WCAC objects to interrogatory No. 8 on the ground that it seeks the discovery of information subject to the work product protection to the extent it seeks the mental impressions of counsel. Subject to and without waiving this objection, WCAC states that Plaintiff has the burden of proving any damages under 17 U.S.C. § 512(f), and Plaintiff has more access to information concerning its alleged damages, if any, than WCAC.

**Interrogatory No. 9**

DESCRIBE in detail the basis for your contention that "no service provider relied upon any alleged misrepresentation by WCAC in removing or disabling access to any material claimed to be infringing." (Affirmative Defense No. 5)

**Answer No. 9**

WCAC states that the facts available to WCAC, including Plaintiff's allegations concerning its communications with YouTube, suggest that YouTube made its own determination that Plaintiff's "VIDEO EXCERPTS AT ISSUE" were infringing before taking them down, and when refusing Plaintiff's repeated requests to put them back up, and thus did not rely on any express or implied assertion by WCAC that such "VIDEO EXCERPTS AT ISSUE" were unprotected by fair use. Plaintiff reserves the right seasonably to supplement its response to this interrogatory.

**Interrogatory No. 10**

DESCRIBE in detail any policy or practice You maintain CONCERNING the sending of notices of claimed infringement, including without limitation Your criteria for sending such notices and the process of determining whether to send such notices.

**Answer No. 10**

WCAC states that it has no such "policy" or "practice" as it understands the meaning of such terms as used by Plaintiff.

**Interrogatory No. 11**

DESCRIBE in detail the measures You have taken, if any, to ensure that Your employees or agents sending Notices of Claimed Infringement on Your behalf consider fair use before sending such notices

**Answer No. 11**

WCAC states that it has only ever sent Notices of Claimed Infringement in relation to the so-called "VIDEO EXCERPTS AT ISSUE," and has not sent any other such notices before or after those at issue in this case. WCAC has not adopted any "measures" as described in Interrogatory No. 11.

**Interrogatory No. 12**

IDENTIFY all persons involved in the decision to send infringement notices to YOUTUBE concerning the VIDEO EXCERPTS AT ISSUE.

**Answer No. 12**

Chris Wangler, Maria Sheehan, and Justin Barrett.

**Interrogatory No. 13**

DESCRIBE in detail the procedure You undertook that led to the sending of the Notices of Claimed Infringement, including but not limited to all facts considered, all Persons involved, any steps taken to determine if the posting of any of the VIDEO EXCERPTS AT ISSUE was a fair use, and the identity of any Person who reviewed each of the VIDEO EXCERPTS AT ISSUE prior to the sending of the Notice of Claimed Infringement for that video.

**Answer No. 13**

In April 2023, Joshua Kastorf of "Waltham DATA" requested a meeting with Maria Sheehan. He and Ms. Sheehan held that meeting on or about June 15, 2023. Ms. Sheehan began the meeting by apologizing for the late response in getting back to him, informing him that she had had several health complications from COVID-19.

Ms. Sheehan and Mr. Kastorf discussed the Waltham DATA YouTube page. Ms. Sheehan told Mr. Kastorf that she commended him and his colleagues for the work they were doing. Ms. Sheehan invited Mr. Kastorf to use WCAC's studio and suggested that if he put his show on WCAC, he would have greater viewership.

Ms. Sheehan told Mr. Kastorf that he could continue to use WCAC's footage of government meetings, so long as he informed WCAC what he wanted to use, tagged the clip "courtesy of" MAC or WCAC (depending on which channel the clip came from), and let viewers know where to find the original video. Mr. Kastorf responded that he would use whatever footage he wanted and that there was nothing Ms. Sheehan could do about it. Ms. Sheehan explained that requests for permission and crediting are common practices among television stations. Mr. Kastorf repeated that he could take whatever he wanted. Ms. Sheehan explained that WCAC's footage is copyrighted, and he needed to follow what all other stations do. Mr. Kastorf got very upset, and he ultimately left. On the way out, Mr. Kastorf said again, "I will take whatever I want."

Ms. Sheehan told Chris Wangler, WCAC's News Director, about her meeting with Kastorf. Mr. Wangler had done research into fair use in the past. On June 16, 2023, Mr. Wangler wrote an email to Maria Sheehan expressing the opinion that videos that Waltham DATA had excerpted from WCAC Videos "and reproduced verbatim with zero editing or commentary" would not qualify for fair use, and that WCAC should send takedown notices concerning those video

9

excerpts. Ms. Sheehan agreed that takedown notices should be sent for such videos, and she informed the president of WCAC's board of directors, M. Justin Barrett, Jr., of WCAC's intention to send them.

WCAC first attempted to alert Google to Waltham DATA's copyright infringement on or around July 6, 2023. Google took no action on WCAC's claim because the account through which the complaint was made was not associated with a WCAC corporate email address. Eventually, WCAC personnel worked to re-establish access to a MAC-TV YouTube account. A former WCAC employee had been responsible for the account but had left and forgotten the password.

Ultimately, Mr. Wangler recovered access to the account, and he sent a takedown notice through that account on or about September 1, 2023, on behalf of Maria Sheehan. YouTube accepted the takedown request and removed the identified video. Thereafter, Mr. Wangler sent additional violation notices for similar videos.

Mr. Wangler reviewed and selected the videos as to which takedown notices should be sent. He purposefully chose only videos that appeared to include no commentary or alteration of the excerpted WCAC Videos.

At the time he sent the takedown notices, neither Mr. Wangler nor Ms. Sheehan knew that YouTube had a policy whereby multiple copyright takedown notices could result in the disabling of a user's YouTube account.

**Interrogatory No. 14**

For each of the Notices of Claimed Infringement You sent to YOUTUBE CONCERNING the VIDEO EXCERPTS AT ISSUE, DESCRIBE in detail the basis for Your assertion that You had a good faith belief that the use of the VIDEO EXCERPTS AT ISSUE was not authorized by the copyright owner, its agent, or the law.

**Answer No. 14**

WCAC objects to so much of Interrogatory No. 14 as demands "the basis" for a conclusion that particular conduct "was not authorized by . . . the law," on the ground that it seeks discovery of legal opinions or conclusions rather than the discovery of facts. Notwithstanding the foregoing objection, WCAC provides the facts known by WCAC at the sending of the notices of claimed infringement that are responsive to Interrogatory No. 14.

Chris Wangler chose the videos on the Waltham DATA YouTube channel that were the subject of takedown notices. Mr. Wangler understood that WCAC had created the WCAC Videos, that it had made the videos available on its cable channel MAC-TV, and that WCAC had published the videos on its website. Mr. Wangler also understood that WCAC had not licensed any portion of the WCAC Videos to any person associated with the "Waltham DATA" YouTube page, and that it had not otherwise granted any person affiliated with the "Waltham DATA" YouTube page permission to use the WCAC Videos. He further understood that it was common practice in the media industry for those who wish to use clips of a television station's content to ask for permission to use clips and to credit the station when doing so, and that "Waltham DATA" had not done so.

In addition to the above, at the time of the sending of the notices of claimed infringement, Mr. Wangler understood that WCAC had never authorized any agent of WCAC to license the WCAC Videos to any person associated with the "Waltham DATA" YouTube page.

Maria Sheehan authorized the sending of the notices of claimed infringement. At the time she did so, Ms. Sheehan knew that Joshua Kastorf was a person associated with the Waltham DATA YouTube page. Ms. Sheehan had met with Mr. Kastorf over the summer and had listened to and considered his assertion that Waltham DATA could take and use whatever content of WCAC it wanted to under the concept of "fair use." Ms. Sheehan communicated with Chris

11

Wangler on this subject, and he expressed the opinion that Waltham DATA's standalone excerpts of WCAC Videos without alteration were not covered by fair use. Ms. Sheehan also knew that Mr. Kastorf's claim was inconsistent with her own experience in how third parties had requested permission to use WCAC content before doing so.

Mr. Wangler, who identified which Waltham DATA videos would be the subject of takedown requests, understood that Waltham DATA had clipped verbatim excerpts of the WCAC Videos and uploaded them to YouTube. He understood that VIDEO EXCERPTS AT ISSUE did not reflect any alteration or transformation of the WCAC Videos by Waltham DATA. He further understood that the Waltham DATA YouTube page purported to be intended to inform Waltham citizens about city government.

**Interrogatory No. 15**

DESCRIBE in detail the actions, if any, You took to comply with the demands made in the November 8, 2023 letter from Channel 781's counsel to Maria Sheehan.

**Answer No. 15**

WCAC objects to this Interrogatory on the ground that it seeks information that is not reasonably calculated to lead to the discovery of admissible evidence in this matter.

**Interrogatory No. 16**

IDENTIFY every instance in which a person or entity requested to license, copy, or otherwise use videos of government meetings shown on MAC-TV or posted on wcac.org, including the name of the requesting person or entity, the video requested, the purpose of the request (if known), whether the request was granted, and any consideration paid.

**Answer No. 16**

WCAC objects to this interrogatory to the extent it demands every instance of such a request on the ground that it is overbroad and seeks information that is not reasonably likely to lead to the discovery of admissible evidence in this action. Without waiving this objection,

pursuant to Fed. R. Civ. P. 33(d), WCAC refers to licenses produced in response to Plaintiff's request for production of documents. Further answering, WCAC states that it sometimes receives calls, including from assignment desks at television stations, requesting permission to use pictures or footage. Such requesters often ask WCAC how it wants to be credited in any use of such content. See, for example, correspondence produced in response to Plaintiff's request for production of documents relating to a Waltham School Committee meeting of February 16, 2022.

**Interrogatory No. 17**

IDENTIFY every instance of which You are aware of unauthorized use of material from Your cable channels or website from September 1, 2022 to the present, including the title, creation date, URL or other internet location, and a description of the material, the identity of the unauthorized user if known, and any action You took in response to the unauthorized use.

**Answer No. 17**

Other than the uses of WCAC Videos by Waltham DATA at issue in this case, in early 2023, an unknown person took a picture for which WCAC owned the copyright and used it in a Reddit post without permission. To disassociate itself from the user's post, WCAC decided to make a statement asking the public to honor its copyright in its content.

**Interrogatory No. 18**

STATE the actual or estimated monthly viewership of MAC-TV from September 1, 2022 to the present.

**Answer No. 18**

WCAC does not have information responsive to this interrogatory within its possession, custody or control.

**Interrogatory No. 19**

STATE the number of actual or estimated number of unique visitors to the http://wcac.org website in each month from September 1, 2022 to the present.

**Answer No. 19**

WCAC has only retained information responsive to this interrogatory for the years 2024-2025. Pursuant to Fed. R. Civ. P. 33(d), WCAC will produce documents reflecting the information requested in this interrogatory.

**Interrogatory No. 20**

STATE the number of actual or estimated number of unique visitors to the http://wcac.org/government page in each month from September 1, 2022 to the present.

**Answer No. 20**

See response to Interrogatory No. 19.

**Interrogatory No. 21**

STATE all of Your sources of funding, including the name of the funding entity, the annual amount, and the terms and conditions of such funding.

**Answer No. 21**

Pursuant to Fed. R. Civ. P. 33(d), WCAC refers Plaintiff to agreements to be produced in response to Plaintiff's request for production of documents reflecting funding arrangements with cable television carriers Verizon, RCN, and Comcast. The City of Waltham disburses funds obtained from the television carriers to WCAC in response to budget requests from WCAC. No taxpayer funding is associated with WCAC' facilities or operation.

WCAC also sells sponsorships of programs on its channel, and sells DVDs of shows and meetings. WCAC also occasionally receives donations. WCAC also rents its studio and equipment to area companies and production houses, and has sold footage produced by WCAC/MAC channel.

## **VERIFICATION**

I, Maria Sheehan, being duly sworn on oath, I have read the foregoing answers to interrogatories and know the contents thereof; that said answers were prepared with the assistance and advice of counsel, upon which I have relied; that the answers set forth herein, subject to inadvertent or undiscovered errors, are based on and therefore necessarily limited by the records and information still in existence, presently recollected, and/or thus far discovered in the course of the preparation of these answers; and, subject to the limitations set forth herein, said answers are true and complete to the best of my knowledge, information and belief.

**SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 25th DAY OF April, 2025.**

/s/ *Maria Sheehan*
Maria Sheehan

As to objections,

/s/ *Jeffrey J. Pyle*
Jeffrey J. Pyle (BBO # 647438)
jpyle@princelobel.com
Sarah L. Doelger (BBO # 712677)
sdoelger@princelobel.com
Prince Lobel Tye LLP
One International Place, Suite 3700
Boston, MA 02110
617.456.8000

Date:   April 25, 2025

Certificate of Service

I, Jeffrey J. Pyle, hereby certify that on April 25, 2025, I served the foregoing document on counsel for the plaintiff by e-mail.

/s/ *Jeffrey J. Pyle*
Jeffrey J. Pyle

15