# Exhibit P



# City of Waltham
### MASSACHUSETTS

## LAW DEPARTMENT
**City Solicitor**
JOHN B. CERVONE

**Assistant City Solicitors**
PATRICIA A. AZADI
BERNADETTE D. SEWELL
MICHELLE LEARNED
LUKE STANTON
FRANCIS P. CRAIG

DIRECT LINE: 781-314-3340
lstanton@city.waltham.ma.us

January 17, 2109

Mr. Justin Barrett
Board President
Waltham Community Access Corporation
400 Main Street
Waltham, MA 02452

Dear Mr. Barrett:

Enclosed herein please find a copy of the signed five year renewal cable license between the City of Waltham and Verizon New England, Inc.

I direct your attention to paragraph *5. PEG Services and Support* which detail the proffer of an HD channel and provide the sum $35,000.00 to be paid directly to WCAC within 45 days of the contract and annually thereafter. The renewal contract also has the annual PEG support amount of 4.6% of the Gross Revenue to be paid directly to WCAC for operating support.

Please review this contract as it will provide the financial support provided to WCAC.

I thank you for your kind attention to the foregoing.

Very truly yours,

Luke Stanton

LS/wmw
enc



# CABLE TELEVISION
# RENEWAL LICENSE

## GRANTED TO

## VERIZON NEW ENGLAND INC.

### MAYOR
### CITY OF WALTHAM,
### MASSACHUSETTS

## DECEMBER 10, 2018

Waltham Renewal License – 12/10/18

WCAC0000665

## TABLE OF CONTENTS

ARTICLE                                                                                    PAGE

1.    DEFINITIONS .................................................................................................. 2
2.    GRANT OF AUTHORITY; LIMITS AND RESERVATIONS ..................................... 6
3.    PROVISION OF CABLE SERVICE .......................................................................... 9
4.    SYSTEM FACILITIES ........................................................................................ 10
5.    PEG SERVICES AND SUPPORT........................................................................... 10
6.    LICENSE FEES.................................................................................................. 15
7.    CUSTOMER SERVICE ........................................................................................ 15
8.    REPORTS AND RECORDS................................................................................... 15
9.    INSURANCE AND INDEMNIFICATION ................................................................. 16
10.   RENEWAL OF LICENSE ..................................................................................... 18
11.   ENFORCEMENT AND TERMINATION OF LICENSE............................................... 19
12.   MISCELLANEOUS PROVISIONS .......................................................................... 20

## EXHIBITS

EXHIBIT A -- MUNICIPAL BUILDINGS TO BE PROVIDED FREE CABLE
SERVICE

EXHIBIT B -- GROSS REVENUE REPORTING FORM

EXHIBIT C -- CUSTOMER SERVICE STANDARDS

EXHIBIT D -- PERFORMANCE BOND

WCAC0000666

THIS CABLE TELEVISION RENEWAL AGREEMENT (this "License" or "Agreement") is entered into by and between the Mayor of the City of Waltham, as Issuing Authority for the grant of the cable television license pursuant to Massachusetts General Laws (hereinafter "M.G.L.") Chapter 166A, and Verizon New England Inc., a corporation duly organized under the applicable laws of the State of New York (the "Licensee").

WHEREAS, the Issuing Authority is a "franchising authority" in accordance with Section 602(10) of the Communications Act (47 U.S.C. § 522(10)) and is authorized to grant one or more nonexclusive cable licenses pursuant to M.G.L. Chapter 166A;

WHEREAS, the Issuing Authority granted to Licensee effective as of November 21, 2007, a nonexclusive Final License to install, maintain, extend, and operate a Cable System in the City for a term of ten (10) years (the "Final License");

WHEREAS, the Licensee has operated a Cable System in accordance with the Final License as of the effective date on its existing Telecommunications Facilities consisting of a Fiber to the Premises Telecommunications Network ("FTTP Network") in the City which also transmits Non-Cable Services pursuant to authority granted by M.G.L. c. 166 and Title II, which Non-Cable Services are not subject to the Massachusetts Cable Law or Title VI;

WHEREAS, pursuant to and in accordance with applicable federal and State law, the Issuing Authority undertook a process to determine whether it should renew the Final License and the terms for such a renewal;

WHEREAS, the Issuing Authority has examined the past performance of Licensee and has determined that Licensee is and has been in material compliance with the Final License and applicable law;

WHEREAS, pursuant to and in accordance with applicable federal and State law, the Licensee submitted to the Issuing Authority a proposal to renew the Final License to operate a Cable System in the City; and

WHEREAS, following good faith negotiations between the parties, the Issuing Authority and Licensee have agreed on the terms for a renewal License under which Licensee will continue to operate its Cable System in the City.

NOW, THEREFORE, in consideration of the Issuing Authority's grant of a renewal License to the Licensee, the Licensee's promise to continue providing Cable Service to residents of the City pursuant to the terms and conditions set forth herein, and for other good and valuable consideration, the receipt and the adequacy of which are hereby acknowledged,

THE SIGNATORIES DO HEREBY AGREE AS FOLLOWS:

WCAC0000667

## 1.   **DEFINITIONS**

Except as otherwise provided herein, the definitions and word usages set forth in the Communications Act are incorporated herein and shall apply in this Agreement. In addition, the following definitions shall apply:

1.1.   *Access Channel*:   A video Channel which the Licensee shall make available to the City without charge for public, educational, or governmental use for the transmission of Video Programming as directed by the Issuing Authority and/or its designee and in accordance with the terms of this License.

1.2.   *Affiliate*:   When used in relation to any Person, another Person who, directly or indirectly, owns or controls, is owned or controlled by, or is under common ownership or control with, such Person.

1.3.   *Basic Service*: Any service tier which includes the retransmission of local television broadcast signals as well as the PEG Channels required by this License.

1.4.   *Cable Division*:   The Cable Television Division of the Massachusetts Department of Telecommunications and Cable.

1.5.   *Cable Service* or *Cable Services*:   Shall be defined herein as it is defined under Section 602(6) of the Communications Act, 47 U.S.C. § 522(6).

1.6.   *Cable System* or *System*:   Shall be defined herein as it is defined under Section 602(7) of the Communications Act, 47 U.S.C. § 522(7), meaning the Licensee's facility, consisting of a set of closed transmission paths and associated signal generation, reception, and control equipment that is designed to provide Cable Service, which includes Video Programming, and which is provided to multiple Subscribers within the City.

1.7.   *Channel*:   Shall be defined herein as it is defined under Section 602(4) of the Communications Act, 47 U.S.C. § 522(4).

1.8.   *City*:   The City of Waltham.

1.9.   *CMR*:   The Code of Massachusetts Regulations.

1.10.   *Communications Act*:   The Communications Act of 1934, as amended.

1.11.   *Complaint*:   Shall be defined herein as it is defined by the Cable Division's Order Adopting Revised Form 500 (June 11, 1999), meaning any written or verbal contact with the Licensee in connection with Cable Service in which a Person expresses dissatisfaction with an act, omission, product or service that is (1) within the Licensee's control, and (2) requires a corrective measure on the part of the Licensee.

1.12.   *Educational Access Channel*:   An Access Channel available for the use of the local educational institutions in the City, as well as the PEG Access Designee.

Waltham Renewal License – 12/10/18

2

WCAC0000668

1.13. *FCC*: The United States Federal Communications Commission, or successor governmental entity thereto.

1.14. *Force Majeure*: An event or events reasonably beyond the ability of Licensee or the Issuing Authority to anticipate and control. With respect to the Licensee, Force Majeure includes, but is not limited to, severe or unusual weather conditions, strikes, labor disturbances, lockouts, war or act of war (whether an actual declaration of war is made or not), insurrection, riots, act of public enemy, actions or inactions of any government instrumentality or public utility, including condemnation, accidents for which the Licensee is not primarily responsible, fire, flood, other acts of God, or work delays caused by waiting for utility providers to service or monitor utility poles to which Licensee's FTTP Network is attached, and unavailability of materials and/or qualified labor to perform the work necessary not attributable to Licensee's own materials allocation decisions.

1.15. *FTTP Network*: Shall have the meaning set forth in the recitals of this Agreement.

1.16. *Government Access Channel*: An Access Channel available for use of the Issuing Authority.

1.17. *Gross Revenue*: All revenues, as determined in accordance with generally accepted accounting principles, derived by the Licensee from the operation of the Cable System to provide Cable Service in the City, including, without limitation, the following items: fees collected from Subscribers (including Commercial Subscribers) for Cable Services, including, without limitation, Basic and premium Cable Services, pay-per-view Cable Services and digital Cable Services; installation, reconnection, downgrade, upgrade and similar charges; revenues received from rentals or sales to Subscribers of Converters, remote controls and other Subscriber equipment used to provide Cable Service over the Cable System; Leased Access Channel programming revenues; revenues that the Licensee receives from home shopping channels as prorated to include such revenue attributable to the Cable System in the City based on the number of Subscribers; advertising revenues as prorated to include such revenue attributable to the Cable System in the City based on the number of Subscribers; and all fees imposed on the Licensee by this License and applicable law that are passed through and paid by Subscribers ("fee-on-fee") in accordance with applicable law. For the avoidance of doubt, Gross Revenue shall include the amount of Licensee's gross advertising revenue (i.e., without netting advertising commissions paid to third parties), calculated in accordance with generally accepted accounting principles. Gross Revenues based on bundled services shall be calculated in accordance with Section 5.2.3 below. Gross Revenues shall be determined in accordance with generally accepted accounting principles; provided, however, that Gross Revenues shall not include:

1.17.1. Revenues received by any of Licensee's Affiliates, except to the extent that such revenues relate directly to the provision of Cable Services over the Cable System in the City;

WCAC0000669

1.17.2. Actual bad debts written off by the Licensee in the normal course of its business, provided, however, that bad debt recoveries shall be included in Gross Revenue during the period collected;

1.17.3. Any revenues foregone as a result of (i) refunds, rebates or discounts made to Subscribers, or (ii) the Licensee's provision of free or reduced cost Cable Services to any Person, including without limitation, employees of the Licensee and public institutions pursuant to M.G.L. Chapter 166A, Section 5(e); provided, however, that if the Licensee receives trades, barters, services or other items of value instead of cash revenue then such items shall be included in Gross Revenue;

1.17.4. Any revenues wholly generated by services that are defined and classified as Non-Cable Services revenue under federal or State law including, without limitation, revenues received from Telecommunications Services; revenues received from Information Services, and directory or Internet advertising revenue including, but not limited to, yellow page, white page, banner advertisement and electronic publishing;

1.17.5. Any revenues of the Licensee or any other Person which is received directly from the sale of merchandise through any Cable Service distributed over the Cable System, notwithstanding that portion of such revenue which represents or can be attributed to a Subscriber fee or a payment for the use of the Cable System for the sale of such merchandise, which portion shall be included in Gross Revenue;

1.17.6. Revenues from the sale of Cable Services on the Cable System to a reseller, when the reseller is required by the City to pay (and does pay) License Fees to the City on the resale of the Cable Services;

1.17.7. Any tax, fee or assessment of general applicability imposed by a City, State, federal or other governmental entity and required to be collected from Subscribers by the Licensee and remitted to the taxing entity (including, but not limited to, taxes in the nature of a sales/use tax, communication tax and non-cable license fees);

1.17.8. Revenues from the sales of capital assets or sales of surplus equipment; provided that this exclusion shall not include sales to Subscribers of Converters, remote controls and other Subscriber equipment for the provision of Cable Service over the Cable System;

1.17.9. Program launch fees; and

1.17.10. Any fees or charges collected from Subscribers for the PEG Grant.

1.18. *HD PEG Access Channel*: A PEG access channel in the High Definition display format for digital television transmissions with video transmitted in a 16:9 aspect ratio with a resolution up to 720p.

WCAC0000670

1.19. *Information Services*: Shall be defined herein as it is defined under Section 3 of the Communications Act, 47 U.S.C. § 153(20).

1.20. *Issuing Authority*: The Mayor of the City of Waltham.

1.21. *License Fee*: The payments to be made by the Licensee to the City, which shall have the meaning as set forth in Section 9 of M.G.L. Chapter 166A.

1.22. *Licensee*: Verizon New England, Inc., and its lawful and permitted successors, assigns and transferees.

1.23. *M.G.L. Chapter 166A*: Chapter 166A of the General Laws of the Commonwealth of Massachusetts.

1.24. *Non-Cable Services*: Any service that does not constitute the provision of Video Programming directly to multiple Subscribers in the City including, but not limited to, Information Services and Telecommunications Services .

1.25. *Normal Business Hours*: Those hours during which Licensee's retail locations in the community are open to serve customers. In all cases, "normal business hours" must include some evening hours at least one night per week and/or some weekend hours.

1.26. *Normal Operating Conditions*: Those service conditions which are within the control of the Licensee. Those conditions which are not within the control of the Licensee include, but are not limited to, natural disasters, civil disturbances, power outages, telephone network outages, and severe or unusual weather conditions. Those conditions which are ordinarily within the control of the Licensee include, but are not limited to, special promotions, pay-per-view events, rate increases, regular peak or seasonal demand periods, and maintenance or upgrade of the Cable System. *See* 47 C.F.R. § 76.309(c)(4)(ii).

1.27. *PEG*: Public, educational, and governmental

1.28. *PEG Access Designee*: Any entity designated by the Issuing Authority for the purpose of owning and/or operating the equipment and facilities used in the production and/or broadcast of PEG Access Channel programming for the Issuing Authority, including, but not limited, to any Access Corporation.

1.29. *Person*: An individual, partnership, association, joint stock company, trust, corporation, or governmental entity.

1.30. *Public Access Channel*: An Access Channel available for the use by the residents in the City.

1.31. *Public Rights-of-Way*: The surface and the area across, in, over, along, upon and below the surface of the public streets, roads, bridges, sidewalks, lanes, courts, ways, alleys, and boulevards, including, public utility easements and public lands and waterways used as Public Rights-of-Way, as the same now or may thereafter exist, which are under the

Waltham Renewal License – 12/10/18

WCAC0000671

jurisdiction or control of the City. Public Rights-of-Way do not include the airwaves above a right-of-way with regard to cellular or other nonwire communications or broadcast services.

    1.32.   *Service Area*: The entire existing territorial limits of the City.

    1.33.   *State*: The Commonwealth of Massachusetts.

    1.34.   *Subscriber*: A Person who lawfully receives Cable Service of the Cable System with the Licensee's express permission.

    1.35.   *Telecommunications Facilities*:    The    Licensee's    existing Telecommunications Services and Information Services facilities, including the FTTP Network.

    1.36.   *Telecommunication Services*: Shall be defined herein as it is defined under Section 3 of the Communications Act, 47 U.S.C. § 153(46).

    1.37.   *Title II*: Title II of the Communications Act.

    1.38.   *Title VI*: Title VI of the Communications Act.

    1.39.   *Video Programming* or *Programming*: Shall be defined herein as it is defined under Section 602(20) of the Communications Act, 47 U.S.C. § 522(20).

    1.40.   *Video Service Provider or VSP:* Any entity using any portion of the Public Rights-of-Way to provide Video Programming services to multiple subscribers within the territorial boundaries of the City, for purchase, barter, or free of charge, regardless of the transmission method, facilities or technologies used. A VSP shall include, but is not limited to, any entity that provides Cable Services, multi-channel multipoint distribution services, broadcast satellite services, satellite delivered services, wireless services, and internet-protocol based services within the territorial boundaries of the City.

## 2.    GRANT OF AUTHORITY; LIMITS AND RESERVATIONS

    2.1.   *Grant of Authority*: Subject to the terms and conditions of this Agreement and M.G.L. Chapter 166A, the Issuing Authority hereby grants the Licensee the right to own, operate and maintain a Cable System in, over and along the Public Rights-of-Way within the City , in order to provide Cable Service. No privilege or power of eminent domain is bestowed by this grant; nor is such a privilege or power bestowed by this Agreement.

    2.2.   *Issuing Authority Does Not Regulate Telecommunications*: The parties recognize that the FTTP Network is constructed, operated and maintained as an upgrade to and/or an extension of Licensee's existing Telecommunications Facilities under Title II and M.G.L. c. 166. The Issuing Authority's regulatory authority under Title VI does not extend to the construction, installation, maintenance or operation of the FTTP Network to the extent the FTTP Network is constructed, installed, maintained or operated for the purpose of upgrading

WCAC0000672

and/or extending Verizon's existing Telecommunications Facilities for the provision of Non-Cable Services.

2.3.   *Term*: This License shall become effective on December 10, 2018 (the "Effective Date") and shall expire at midnight on December 9, 2023. The term of this License shall be five (5) years from the Effective Date unless this License is earlier revoked or terminated as provided herein, or surrendered.

2.4.   *Modification/Termination Based on VSP Requirements*:

2.4.1. If the Issuing Authority enters into any franchise, agreement, license, or grant of authorization to a VSP to provide Video Programming services to residential subscribers in the Town with terms or conditions materially less burdensome than those imposed by this License, Licensee and the Issuing Authority shall, within sixty (60) days of the Issuing Authority's receipt of Licensee's written notice, commence negotiations to modify this License to create reasonable competitive equity between Licensee and such other VSPs. Any modification of the License pursuant to the terms of this section shall not trigger the requirements of 207 CMR 3.07. The PEG Grant and PEG Access Support, as provided in Section 5.3, will not be subject to modification under this Section 2.4.1 or 2.4.2.

2.4.2. In the event the parties do not reach mutually acceptable agreement on a modification requested by Licensee, Licensee shall, at any time and in its sole discretion, have the option of exercising any of the following actions:

a.  commencing license renewal proceedings in accordance with 47 U.S.C. 546 with the License term being accelerated, thus being deemed to expire thirty-six (36) months from the date of Licensee's written notice to seek relief hereunder;

b.  terminating the License within three (3) years from written notice to the Issuing Authority;

c.  if agreed by both parties, submitting the matter to commercial arbitration by a mutually-selected arbitrator in accordance with the rules of the American Arbitration Association;

d.  submitting the matter to mediation by a mutually-acceptable mediator; or

e.  submitting the matter to the Cable Division of the Massachusetts Department of Telecommunications and Cable.

2.4.3. PEG Access Support payments and PEG Grants under this License shall be modified in accordance with the terms and conditions set forth in Section 5.3.2 and 5.3.4 hereunder.

2.5.   *Grant Not Exclusive*: This License and the rights granted herein to use and occupy the Public Rights-of-Way to provide Cable Services shall not be exclusive, and the

WCAC0000673

Issuing Authority reserves the right to grant other licenses for similar uses or for other uses of the Public Rights-of-Way, or any portions thereof, to any Person, or to make any such use themselves, at any time during the term of this License. The issuance of additional cable license(s) shall be subject to applicable federal laws, M.G.L. Chapter 166A and applicable regulations promulgated thereunder.

2.6.    *License Subject to Federal and State Law:* Notwithstanding any provision to the contrary herein, this License is subject to and shall be governed by all applicable provisions of federal and Massachusetts law as they may be amended, including but not limited to the Communications Act and M.G.L. Chapter 166A.

2.7.    *No Waiver:*

2.7.1. The failure of the Issuing Authority on one or more occasions to exercise a right or to require compliance or performance under this License, M.G.L. Chapter 166A or any other applicable law shall not be deemed to constitute a waiver of such right or a waiver of compliance or performance by the Issuing Authority, nor to excuse Licensee from complying or performing, unless such right or such compliance or performance has been specifically waived in writing.

2.7.2. The failure of the Licensee on one or more occasions to exercise a right under this License or applicable law, or to require performance under this License, shall not be deemed to constitute a waiver of such right or of performance of this Agreement, nor shall it excuse the Issuing Authority from performance, unless such right or performance has been specifically waived in writing.

2.8.    *Construction of Agreement:*

2.8.1. The provisions of this License shall be liberally construed to effectuate their objectives.

2.8.2. Nothing herein shall be construed to limit the scope or applicability of Section 625 of the Communications Act, 47 U.S.C. § 545.

2.9.    *Police Powers:* Nothing in this License shall be construed to prohibit the reasonable, necessary and lawful exercise of the City's police powers, provided that the City shall not exercise its police powers in a manner that would result in a material alteration of the terms and conditions of this License. Any such police powers exercised by the City in contravention of the preceding sentence shall be of no effect with respect to this License.

2.10.    *Transfer of the License:*

2.10.1. Subject to Section 617 of the Communications Act, M.G.L. Chapter 166A and Section 2.10.2 below, the Licensee shall not transfer this License without the prior consent of the Issuing Authority, provided that such consent shall not be unreasonably withheld, delayed or conditioned. Such consent shall be given only after a public hearing upon a written application therefore on forms prescribed by the Cable Division and/or the FCC. Subject

Waltham Renewal License – 12/10/18

WCAC0000674

to applicable law, the Licensee shall submit to the Issuing Authority an original and one (1) copy of the application on FCC Form 394 requesting such transfer request. The Issuing Authority shall have one hundred twenty (120) days, or such other time frame that may be established by applicable law, from the filing of the completed Form 394 to take final action on it. If the Issuing Authority has not taken final action within such one hundred twenty (120) day period, then the application shall be deemed approved, unless said one hundred twenty (120) day period is extended by mutual consent of the parties.

2.10.2. The Licensee shall not be required to obtain the Issuing Authority's consent to transfer this License in connection with any transaction that does not constitute a transfer of control under applicable State laws and regulations, including, without limitation, the following: (i) (A) a transfer of an ownership or other interest in the Licensee to the parent of the Licensee or to another Affiliate of the Licensee; (B) transfer or assignment of this License or control thereof to the parent of the Licensee or to another Affiliate of the Licensee; (C) any action which is the result of a merger of the parent of the Licensee; or (D) any action which is the result of a merger of another Affiliate of the Licensee; or (ii) in connection with a transfer in trust, by mortgage, by other hypothecation, by assignment of any rights, title, or interest of the Licensee in this License or the Cable System in order to secure indebtedness; provided, however, that to the extent that any of the foregoing transactions are determined to constitute a transfer of control pursuant to 207 CMR 4.01, then such transaction shall be subject to the Cable Division's transfer regulations (207 CMR 4.00, et. seq.).

## 3. PROVISION OF CABLE SERVICE

3.1. *Service Area*: Subject to the issuance of all necessary permits by the City, the Licensee shall continue to offer Cable Service to all residential households in the Service Area, except: (A) for periods of Force Majeure; (B) for periods of delay caused by the City; (C) for periods of delay resulting from the Licensee's inability to obtain authority to access rights-of-way in the Service Area; (D) in areas where developments or buildings are subject to claimed exclusive arrangements with other providers; (E) in areas, developments, buildings or other residential dwelling units that Licensee cannot obtain permission to access under reasonable terms and conditions after good faith negotiation; (F) in areas, developments, buildings or other residential dwelling units where the Licensee is unable to provide Cable Service for technical reasons or which require non-standard facilities which are not available on a commercially reasonable basis, including, but not limited to, circumstances where Licensee cannot access the area, development, buildings or other residential dwelling units by using Licensee's existing network pathways and which would thus require the construction of new trunk, feeder, or distribution lines; and (G) in areas, developments, buildings or other residential dwelling units that are not habitable or have not been constructed as of the Effective Date.

3.2. *Availability of Cable Service*: The Licensee shall make Cable Service available to all residential dwelling units, and may make Cable Service available to businesses, within the Service Area in conformance with Section 3.1 and the Licensee shall not discriminate between or among any individuals in the availability of Cable Service. In the areas in which the Licensee provides Cable Service, the Licensee shall be required to connect, at the Licensee's

Waltham Renewal License – 12/10/18

WCAC0000675

expense, all residential dwelling units that are within one hundred fifty (150) feet of trunk or feeder lines not otherwise already served by the Licensee's FTTP Network. The Licensee shall be allowed to recover, from a Subscriber that requests such connection, actual costs incurred for residential dwelling unit connections that exceed one hundred fifty (150) feet, and actual costs incurred to connect any non-residential dwelling unit Subscriber.

3.3.    *Cable Service to Public Buildings*: The Licensee shall provide one Cable Service drop and outlet along its activated Cable System route in the City, as required by M.G.L. Chapter 166A, Section 5(e) at no cost to public schools, police and fire stations, public libraries and other public buildings designated by the Issuing Authority pursuant to written notice to Licensee. All such written designations shall include the street address of each building. The current designation of such buildings and their addresses is set forth in **Exhibit** A. The Licensee shall coordinate the location of each outlet with the representatives of the City and/or of the buildings receiving service pursuant to this Section 3.3.

## 4.    **SYSTEM FACILITIES**

4.1.    *System Characteristics*: The Licensee's Cable System shall meet or exceed the following requirements:

4.1.1. The System shall be operated with an initial digital carrier passband of between 50 and 860 MHz.

4.1.2. The System shall be operated to be an active two-way plant for subscriber interaction, if any, required for the selection or use of Cable Service.

4.2.    *Emergency Alert System*: The Licensee shall comply with the Emergency Alert System ("EAS") requirements of the FCC's rules and applicable State and local EAS Plans in order that emergency messages may be distributed over the System.

## 5.    **PEG SERVICES AND SUPPORT**

5.1.    *PEG Set Aside; Interconnection*:

5.1.1. The Licensee shall continue to make available to the Issuing Authority and/or the PEG Access Designee, as designated in writing by the Issuing Authority, three (3) SD PEG Access Channels on its Basic Service Tier. In accordance with Section 5.1.2 below, the Issuing Authority may also request one (1) HD PEG Access Channel for a total of four (4) PEG Access Channels.

5.1.2. In addition to the three (3) SD PEG Access Channels referenced above, the Licensee shall make one (1) HD PEG Access Channel available to the Issuing Authority and/or the PEG Access Designee, as designed in writing by the Issuing Authority, as follows: Starting on the Effective Date of this Renewal License, the Issuing Authority may make a written request for such an HD PEG Access Channel to the Licensee. Upon receipt of the

Waltham Renewal License – 12/10/18

WCAC0000676

Issuing Authority's written request, the Licensee shall make such an HD PEG Access Channel available to the Issuing Authority or the PEG Access Designee within two hundred and seventy (270) days of the Licensee's receipt of such written notice from the Issuing Authority. The Issuing Authority shall include in its written notice a statement of whether the programming on such HD PEG Access Channel shall either be a simulcast of existing SD PEG Access Channel programming or distinct programming. The Issuing Authority or the PEG Access Designee may subsequently change the programming on the HD PEG Access Channel from an SD PEG Access Channel simulcast to distinct programming, or from distinct programming to an SD PEG Access Channel simulcast, upon one hundred (180) days prior written notice from the Issuing Authority to the Licensee which change shall no occur more than once during the License term. To the extent permitted by law, the Licensee shall be allowed to recover from Subscribers applicable costs incurred to transmit HD PEG Access Channel programming of any type.

      5.1.3.  All programming content for the HD PEG Access Channel shall be transmitted to Licensee in HD-SDI format with a resolution of 720p.  Licensee reserves the right to reassign channel number and location for any or all of the PEG Access Channels at any time during the term. The Issuing Authority expressly acknowledges that an HD PEG Access Channel may not be available at all times during the term of this License on Licensee's Basic Service Tier and that in order to view the HD PEG Access Channel, a Subscriber may be required to upgrade equipment at an additional charge.

      5.1.4.  The Issuing Authority hereby authorizes the Licensee to transmit PEG Access Channel programming within and without the City's jurisdictional boundaries.  The Licensee specifically reserves the right to make or change channel assignments in its sole discretion.  If a PEG Channel provided under this Article is not being utilized by the City, the Licensee may utilize such PEG Channel, in its sole discretion, until such time as the City elects to utilize the PEG Channel for its intended purpose.  In the event that the City determines to use such PEG capacity, the City shall provide the Licensee with sixty (60) days' prior written notice of such request.

      5.2.  *PEG Interconnection and Cablecasting*:  The Licensee shall continue to connect to equipment owned by the Issuing Authority and/or the PEG Access Designee at the PEG Access Studio, 400 Main Street, Waltham, MA (the "Access Studio") and maintain auxiliary links to the Access Studio from (a) Waltham City Hall, 610 Main Street, Waltham, MA, (b) Waltham High School, 617 Lexington Street, Waltham, MA and (c) Clark Government Center, 119 School Street, Waltham, MA (the "Auxiliary Locations").  The Issuing Authority or, if designated by the Issuing Authority in writing to Licensee, the PEG Access Designee, shall be required to pay Licensee for all costs associated with: (i) any equipment upgrade where the need for the upgrade is initiated by the Issuing Authority or PEG Access Designee; (ii) relocating any connection where the need for relocation is initiated by the Issuing Authority or PEG Access Designee; (iii) re-installing and/or replacing any connection at an existing location where the need for such re-installation and/or replacement is initiated by the Issuing Authority or PEG Access Designee; or (iv) installing any new connection if initiated by the Issuing Authority or PEG Access Designee; provided, however, that Issuing Authority and/or PEG Access Designee responsibility for the foregoing costs is subject to the Issuing Authority's express written consent, and subject further to Licensee's prior disclosure of such costs and prior consent to

Waltham Renewal License – 12/10/18

11

same by the Issuing Authority or PEG Access Designee. The demarcation points between the Licensee's signal processing equipment (which the Licensee shall own, install and maintain) and the Issuing Authority's PEG equipment shall be at the output of the Issuing Authority's signal processing equipment at the Access Studio and Auxiliary Locations. The Issuing Authority and/or the PEG Access Designee shall be solely responsible for operating its switching equipment and the picture and audio quality of all PEG access programming up to the demarcation points and for ensuring all PEG access programming is inserted on the appropriate upstream PEG Access Channel. All PEG access programming shall be transmitted to the Licensee in baseband, SD-SDI or HD-SDI format with either mono or stereo audio signals, and with signals received by Licensee in stereo cablecast by Franchisee in stereo. Notwithstanding the foregoing, the Licensee shall not be obligated to provide the Issuing Authority or PEG Access Designee with either cablecast equipment and facilities or the personnel responsible for maintaining and operating equipment and facilities on the Issuing Authority's side of the demarcation points and used to generate or administer any PEG access signals, except as necessary to implement the Licensee's responsibilities specified herein. The Issuing Authority and the Licensee shall work together in good faith to resolve any connection issues. If the Issuing Authority issues a license to, or renews a license with, a competing VSP, the competing VSP may not connect its system to Licensee's System for the purposes of obtaining PEG access programming from the PEG Access Channels transmitted on Licensee's System without Licensee's prior written consent.

        5.2.1    The Licensee shall monitor the PEG Access Channels for technical quality and shall ensure that they are maintained at standards the same or better than those which apply to the Cable System's commercial Channels, provided, however, that the Licensee is not responsible for the production quality of PEG Access programming productions, nor for any deficiencies in the source signal it receives from any party over which the Licensee has no control, nor for any PEG Access equipment not owned by the Licensee.

        5.3.    *PEG Grant and PEG Access Support:*

        5.3.1.  Licensee shall provide the following two (2) separate funding sources to the Issuing Authority for PEG Access capital funding purposes (the "PEG Grant"), as follows:

        (1)  Within forty-five (45) days of the Effective Date, Licensee shall pay to the Waltham Community Access Corporation ("WCAC"), 400 Main Street Waltham, MA 02451, the sum of Thirty-five Thousand Dollars ($35,000). Four (4) additional payments in the same dollar amount ($35,000) shall be paid by the Licensee to WCAC on the first, second, third and fourth anniversaries of the Effective Date of the License; and

        (2)  The Licensee shall pay an amount equal to twenty-five cents ($0.25) per Subscriber per month, payable on a quarterly basis, no later than forty-five (45) days following the end of each calendar quarter. The first payment hereunder shall be made on or before February 15, 2019, for the previous period from the Effective Date through December 31, 2018.

WCAC0000678

5.3.2. If the Issuing Authority enters into any new or renewed cable license agreement with any other VSP which contains obligations associated with a PEG Grant or other comparable program that are lesser than the obligations set forth above in Section 5.3.1, the Licensee's obligations under this Section shall be reduced, on an annual basis and upon the effective date of said agreement, to an amount equal to the lowest total payment required to be made by such VSP to the City and/or the WCAC. The relief available in the event of the foregoing is equitable relief going forward, and the Licensee shall not recover amounts already paid to WCAC. Equipment, services and other in kind, non-monetary contributions to the City by such VSP for PEG Access shall not count towards the cash grants referenced in this paragraph.

5.3.3. Licensee shall be allowed to submit or correct any payments that were incorrectly omitted, and shall be refunded any payments that were incorrectly submitted, in connection with the PEG Grant remittances within ninety (90) days following the PEG Grant payment date for which such payments were applicable. Any such refund shall be requested in writing by Licensee and shall include an itemized account of the basis of the refund requested. The PEG Grant shall not be counted against either the PEG Access Support payment required by Section 5.3.4, or any License Fee required by Section 6.1. The Issuing Authority and/or PEG Access Designee shall own all facilities and equipment purchased with the PEG Grant. The Licensee shall have no obligation to maintain, repair, replace or insure any equipment or facilities purchased with the PEG/I-Net Grant.

5.3.4. *PEG Access Support*: The Licensee shall provide annual funding to the WCAC for PEG Access Channel operating support or other PEG Access Channel costs and expenses ("PEG Access Support") in the amount of four and six tenths percent (4.6%) of the Licensee's annual Gross Revenue and shall also provide annual funding to the Waltham School Committee, 617 Lexington Street Waltham, MA 02452, for PEG Access Support in the amount of four tenths of one percent (0.4%) of the Licensee's annual Gross Revenue. The combined percentage of the PEG Access Support payments to WCAC and the Waltham School Committee is subject to the limitation in Section 6.2. Furthermore, if the City issues or renews any cable licenses after the Effective Date that provide for a lower percentage of PEG Access Support than the percentage of the Licensee's combined percentage of PEG Access Support payments to WCAC and the Waltham School Committee, then Licensee's PEG Access Support payments under this License shall be reduced to match such lower percentage over that same time period. Both WCAC and the Waltham School Committee shall place Licensee's PEG Access Support payments in a restricted account for cable related purposes.

5.3.5. The PEG Access Support payments (Section 5.3.4) shall be made no later than forty-five (45) days following the end of each calendar quarter. Each such payment shall be accompanied by a Gross Revenue reporting form substantially in the form of **Exhibit B**. The Licensee shall be allowed to provide an extra payment if needed to correct any payments that were incorrectly omitted, and shall have the right to offset against future payments any payments that were incorrectly submitted, in connection with the quarterly remittances within ninety (90) days following the close of the calendar quarter for which such payments were applicable. For purposes of the PEG Access Support payment, the period for determining Gross Revenues shall be the preceding calendar quarter. If Cable Services are provided to Subscribers

Waltham Renewal License – 12/10/18

WCAC0000679

in conjunction with Non-Cable Services, then the calculation of Gross Revenues shall be adjusted, if needed, to include only the value of the Cable Services billed to Subscribers, as reflected on the books and records of the Licensee in accordance with FCC and/or State rules, regulations, standards or orders. Notwithstanding the foregoing, if the Licensee bundles Cable Service with Non-Cable Service, the Licensee agrees that it will not intentionally or unlawfully allocate such revenue for the purpose of evading payments under this license. The parties agree that tariffed Telecommunications Services that cannot be discounted by state or federal law or regulation are to be excluded from the bundled discount allocation basis.

5.4.    *Indemnity for PEG*:    The Issuing Authority shall require all local producers and users of any of the PEG facilities or Channels to agree in writing to authorize the Licensee to transmit Programming consistent with this License and to hold harmless and defend the Licensee and the City from and against any and all liability or other injury, including the reasonable cost of defending claims or litigation, arising from or in connection with claims for failure to comply with applicable federal laws, rules, regulations or other requirements of local, state or federal authorities; for claims of libel, slander, invasion of privacy, or the infringement of common law or statutory copyright; for unauthorized use of any trademark, trade name or service mark; for breach of contractual or other obligations owing to third parties by the producer or user; and for any other injury or damage in law or equity, which result from the use of a PEG facility or Channel. The Issuing Authority shall establish rules and regulations for use of PEG facilities consistent with, and as required by, Section 611 of the Communications Act (47 U.S.C. § 531) and this License.

5.5.    *Recovery of Costs*:    To the extent permitted by federal and State law, the Licensee shall be allowed to recover the costs of the PEG Grant, the PEG Access Support, and any other costs, including interconnection costs, arising from the provision of PEG services from Subscribers and to include such costs as a separately billed line item on each Subscriber's bill.

5.6.    *Non-Commercial Programming*:    The Issuing Authority and/or PEG Access Designee shall not use or allow others to use the PEG Access Channels to provide for-profit commercial programming. Nothing in this Section 5.6 shall prohibit the Issuing Authority and/or PEG Access Designee from having memberships, sponsorships, underwriting or acknowledgements (such as underwriting and acknowledgements accepted by PBS), to the extent not otherwise prohibited by applicable law and regulation.

5.7.    *Listing of PEG Access Channels On Licensee's Electronic Program Guide*: If the Licensee lists PEG Access Channel program content titles on its electronic program guide in any other municipality in the State (other than on a test or trial basis), then it shall, upon written request, discuss in good faith with the Issuing Authority the technical feasibility and commercial reasonability of listing the City's PEG Access Channel program content titles on the Licensee's electronic program guide; however, the Licensee shall not be required to list the City's PEG Access Channel program content titles on its electronic program guide.

5.8.    *No PEG Access Designee Rights*:    The Issuing Authority and the Licensee herein acknowledge and agree that any PEG Access Designee is not a party to this License and

WCAC0000680

that any provisions herein that may affect a PEG Access Designee are not intended to create any rights on behalf of any PEG Access Designee.

## 6.    LICENSE FEES

6.1.    *License Fee*: Pursuant to Section 9 of M.G.L. Chapter 166A, the Licensee shall pay to the City, throughout the term of this License, a license fee equal to fifty cents ($.50) per Subscriber per year (the "License Fee").

6.2.    *Maximum Franchise Fee Obligation*: The Licensee shall not be liable for a total annual franchise fee commitment pursuant to this License and applicable law in excess of five percent (5%) of its annual Gross Revenues; provided that such five percent (5%) shall include (i) the License Fee payable to the City (Section 6.1), (ii) the license fee payable to the Commonwealth of Massachusetts pursuant to Section 9 of M.G.L. Chapter 166A, and (iii) the PEG Access Support (Section 5.3.4), but it shall not include the PEG Grant (Section 5.3.1).

6.3.    *Payment Information*: In determining the License Fee, the number of Subscribers shall be measured as of December 31st of the preceding calendar year. The License Fee shall be paid no later than March 15th of each year during the term of this License.

6.4.    *Limitation on Actions*: The parties agree that the period of limitation for recovery of any payment obligation under this Agreement shall be three (3) years from the date on which payment by the Licensee is due.

## 7.    CUSTOMER SERVICE

Customer Service Requirements are set forth in **Exhibit C**, which shall be binding unless amended by written consent of the parties.

## 8.    REPORTS AND RECORDS

8.1.    *Open Books and Records*: Upon at least thirty (30) days written notice to the Licensee, the Issuing Authority shall have the right to inspect the Licensee's books and records pertaining to the Licensee's provision of Cable Service in the City at any time during Licensee's regular business hours and on a nondisruptive basis, as are reasonably necessary to ensure compliance with the terms of this License. Such notice shall specifically reference the section of this License which is under review, so that the Licensee may organize the necessary books and records for appropriate access by the Issuing Authority. The Licensee shall not be required to maintain any books and records for License compliance purposes longer than three (3) years. Notwithstanding anything to the contrary set forth herein, the Licensee shall not be required to disclose information that it reasonably deems to be proprietary or confidential in nature, nor disclose any of its or an Affiliate's books and records not relating to the provision of Cable Service in the City, except as required by federal/ Massachusetts Law and/or their respective regulations. The Issuing Authority shall treat any information disclosed by the

Waltham Renewal License – 12/10/18

WCAC0000681

Licensee as confidential and shall only disclose it to employees, representatives, and agents thereof that have a need to know, or in order to enforce the provisions hereof. The Licensee shall not be required to provide Subscriber information in violation of Section 631 of the Communications Act, 47 U.S.C. § 551.

    8.2.   *Records Required*: The Licensee shall at all times maintain:

    8.2.1. Records of all written Complaints for a period of three (3) years after receipt by the Licensee.

    8.2.2. Records of outages for a period of three (3) years after occurrence, indicating date, duration, area, and the number of Subscribers affected, type of outage, and cause;

    8.2.3. Records of service calls for repair and maintenance for a period of three (3) years after resolution by the Licensee, indicating the date and time service was required, the date of acknowledgment and date and time service was scheduled (if it was scheduled), and the date and time service was provided, and (if different) the date and time the problem was resolved; and

    8.2.4. Records of installation/reconnection and requests for service extension for a period of three (3) years after the request was fulfilled by the Licensee, indicating the date of request, date of acknowledgment, and the date and time service was extended.

    8.3.   *Dual Filings*: Upon written request of the Issuing Authority, the Licensee shall provide a copy of any documents or forms filed by the Licensee with the FCC and/or the Cable Division that pertain to the Licensee's Cable System in the City.

    8.4.   *Proof of Performance Tests*: Upon written request of the Issuing Authority, the Licensee shall provide a copy of proof of performance tests required by applicable law.

    8.5.   *Quality of Service*: If there exists credible evidence which, in the reasonable judgment of the Issuing Authority, casts doubt upon the reliability or technical quality of the Licensee's Cable System in the City then, after notice to the Licensee and an opportunity to cure, the Issuing Authority shall have the right to require the Licensee to test, analyze and report in writing on the performance of the Cable System.

## 9.    INSURANCE AND INDEMNIFICATION

    9.1.   *Insurance*:

    9.1.1. The Licensee shall maintain in full force and effect, at its own cost and expense, during the term of this License, the following insurance coverage:

WCAC0000682

9.1.1.1. Commercial General Liability Insurance in the amount of four million dollars ($4,000,000) combined single limit for property damage and bodily injury. Such insurance shall cover the construction, operation and maintenance of the Cable System, and the conduct of the Licensee's Cable Service business in the City.

9.1.1.2. Automobile Liability Insurance in the amount of one million dollars ($1,000,000) combined single limit for bodily injury and property damage coverage.

9.1.1.3. Workers' Compensation Insurance meeting all legal requirements of the Commonwealth of Massachusetts.

9.1.1.4. Employers' Liability Insurance in the following amounts: (A) Bodily Injury by Accident:  $100,000; and (B) Bodily Injury by Disease:  $100,000 employee limit; $500,000 policy limit.

9.1.2. The City shall be named as an additional insured as their interests may appear under each of the insurance policies required in this Article 9 except Worker's Compensation and Employer's Liability Insurance.

9.1.3. The Licensee shall not cancel any required insurance policy without submitting documentation to the Issuing Authority verifying that the Licensee has obtained alternative insurance in conformance with this Agreement.

9.1.4. Each of the required insurance policies shall be with insurers qualified to do business in the State of Massachusetts, with an A- or better rating for financial condition and financial performance by Best's Key Rating Guide, Property/Casualty Edition.

9.1.5. Upon written request, Licensee shall deliver to the Issuing Authority Certificates of Insurance showing evidence of the required coverage.

9.2. *Indemnification*:

9.2.1. The Licensee shall indemnify, defend and hold the City harmless at all times during the term of this License from any and all claims for injury and damage to persons or property, both real and personal, caused by the installation, operation, or maintenance of any structure, equipment, wire or cable authorized to be installed pursuant to this License. The City shall provide the Licensee with timely written notice of a claim or action for which it seeks indemnification under this Section 9.2; provided that in any event the City shall provide the Licensee with such written notice within a period of time reasonably sufficient to allow the Licensee, at Licensee's discretion, to timely move to dismiss or answer the claim provided that such time of notice does not otherwise prejudice the Licensee's ability to defend the claim or action. Notwithstanding the foregoing, the Licensee shall not indemnify the City for any damages, liability or claims resulting from the willful misconduct or negligence of the City, its officers, agents, employees, attorneys, consultants, independent contractors or third parties or for any activity or function conducted by any Person other than the Licensee.

Waltham Renewal License – 12/10/18

WCAC0000683

9.2.2. With respect to the Licensee's indemnity obligations set forth in Section 9.2.1, the Licensee shall, at its own expense, provide the defense of any claims brought against the City by selecting counsel of the Licensee's choice to defend the claim, subject to the consent of the City, which shall not unreasonably be withheld. Nothing herein shall be deemed to prevent the City from cooperating with the Licensee and participating in the defense of any litigation by its own counsel at its own cost and expense, provided however, that after consultation with the City, the Licensee shall have the right to defend, settle or compromise any claim or action arising hereunder, and the Licensee shall have the authority to decide the appropriateness and the amount of any such settlement. In the event that the terms of any such proposed settlement includes the release of the City and the City does not consent to the terms of any such settlement or compromise, the Licensee shall not settle the claim or action but its obligation to indemnify the City shall in no event exceed the amount of such proposed settlement.

9.3. *Performance Bond.* The Licensee shall provide to the City, and shall maintain throughout the term of this License, a performance bond in the City's favor in the amount of One Hundred Thousand Dollars ($100,000) securing the performance of the Licensee's obligations under this License. The performance bond shall be substantially in the form of **Exhibit D**. In the event that a performance bond provided pursuant to this License is not renewed or is cancelled, the Licensee shall provide new security pursuant to this Article within thirty (30) days of such failure to renew or cancellation. Neither cancellation, nor termination nor refusal by the surety to extend the bond, nor the inability of the Licensee to file a replacement bond or replacement security for its obligations under this License, shall constitute a loss to the City recoverable under the bond.

## 10. RENEWAL OF LICENSE

10.1. *Governing Law:* The City and the Licensee agree that any proceedings undertaken by the City that relate to the renewal of this License shall be governed by and comply with the provisions of Section 626 of the Communications Act, 47 U.S.C. § 546 and applicable provisions of M.G.L. Chapter 166A.

10.2. *Needs Assessments:* In addition to the procedures set forth in Section 626 of the Communications Act, the City shall notify the Licensee of all of its assessments regarding the identity of future cable-related community needs and interests, as well as the past performance of the Licensee under the terms of this License. Such assessments shall be provided to the Licensee by the City promptly so that the Licensee has adequate time to submit a proposal under Section 626 of the Communications Act and complete renewal of this License prior to expiration of its term.

10.3. *Informal Negotiations:* Notwithstanding anything to the contrary set forth herein, the Licensee and the City agree that at any time during the term of the then current License, while affording the public appropriate notice and opportunity to comment, the City and the Licensee may agree to undertake and finalize informal negotiations regarding renewal of the then current License and the Issuing Authority may grant a renewal thereof.

Waltham Renewal License – 12/10/18

WCAC0000684

10.4. *Consistent Terms*: The Licensee and the City consider the terms set forth in this Article 10 to be consistent with the express provisions of Section 626 of the Communications Act.

## 11.   ENFORCEMENT AND TERMINATION OF LICENSE

11.1. *Notice of Violation*: If at any time the Issuing Authority believes that the Licensee has not complied with the terms of this License, the Issuing Authority shall informally discuss the matter with the Licensee. If these discussions do not lead to resolution of the problem in a reasonable time, the Issuing Authority shall then notify the Licensee in writing of the exact nature of the alleged noncompliance (for purposes of this Article, the "Noncompliance Notice").

11.2. *The Licensee's Right to Cure or Respond*: The Licensee shall have thirty (30) days from receipt of the Noncompliance Notice to: (i) respond to the Issuing Authority, if the Licensee contests (in whole or in part) the assertion of noncompliance; (ii) cure such noncompliance; or (iii) in the event that, by its nature, such noncompliance cannot be cured within such thirty (30) day period, initiate reasonable steps to remedy such noncompliance, shall continue such efforts until such non-compliance is cured, and shall notify the Issuing Authority at no more than thirty (30) day intervals of the steps being taken for compliance and the date by which they are projected to be completed. Upon a jointly agreed upon cure of any noncompliance, the City shall provide the Licensee with written confirmation that such cure has been effected.

11.3. *Public Hearing*: In the event that the Licensee fails to respond to the Noncompliance Notice pursuant to the procedures set forth in Section 11.2 above, and if the Issuing Authority seeks to continue its investigation into the alleged noncompliance, then the Issuing Authority shall schedule a public hearing. The Issuing Authority shall provide the Licensee at least thirty (30) days prior written notice of such public hearing, which will specify the time, place and purpose of such public hearing and whether revocation of this License is a possible consequence. At any designated public hearing where revocation of this License is not a possible consequence, the Licensee shall be provided a fair opportunity for full participation, including the right to be represented by legal counsel and to introduce relevant evidence. At any designated public hearing where revocation of this License is a possible consequence, the Licensee shall be provided a fair opportunity for full participation, including the right to be represented by legal counsel and to introduce relevant evidence, and shall also have the right, to the extent permitted by law, to require the production of evidence, to compel the relevant testimony of the officials, agents, employees or consultants of the Issuing Authority, to compel the testimony of other persons, and to question and/or cross examine witnesses. A complete record shall be made of such hearing. Within thirty (30) days of the close of the hearing, the Issuing Authority shall issue a written determination of its findings.

11.4. *Enforcement*: Subject to applicable federal and State law, in the event the Issuing Authority, after the public hearing set forth in Section 11.3, determines that the Licensee is in default of any provision of this License, the Issuing Authority may:

Waltham Renewal License – 12/10/18

WCAC0000685

11.4.1.  Seek specific performance of any provision, which reasonably lends itself to such remedy, as an alternative to damages;

11.4.2.  Commence an action at law for monetary damages or seek other equitable relief;

11.4.3.  Submit a claim against an appropriate part of the performance bond pursuant to Section 9.3 above;

11.4.4.  In the case of a substantial noncompliance of a material provision of this License, seek to revoke this License in accordance with Section 11.5 below; or

11.4.5.  Invoke any other lawful remedy available to the City.

11.5  *Revocation*:  In the event that the Issuing Authority determines that it will revoke this License pursuant to Section 11.4 above, the Licensee may appeal such written determination of the Issuing Authority to an appropriate court or to the Cable Division consistent with applicable law and regulation.  The Issuing Authority may, at its sole discretion, take any lawful action that it deems appropriate to enforce the Issuing Authority's rights under this License.

## 12.    MISCELLANEOUS PROVISIONS

12.1.  *Actions of Parties*:  In any action by the City or the Licensee that is mandated or permitted under the terms hereof, such party shall act in a reasonable, expeditious, and timely manner.  Furthermore, in any instance where approval or consent is required under the terms hereof, such approval or consent shall not be unreasonably withheld, delayed or conditioned.

12.2.  *Binding Acceptance*:  This Agreement shall bind and benefit the parties hereto and their respective receivers, successors and assigns, and the promises and obligations herein shall survive the expiration date hereof.

12.3.  *Preemption*:  In the event that federal or State law, rules, or regulations preempt a provision or limit the enforceability of a provision of this Agreement, the provision shall be read to be preempted to the extent and for the time, but only to the extent and for the time, required by law.  In the event such federal or State law, rule or regulation is subsequently repealed, rescinded, amended or otherwise changed so that the provision hereof that had been preempted is no longer preempted, such provision shall thereupon return to full force and effect, and shall thereafter be binding on the parties hereto, without the requirement of further action on the part of the Issuing Authority.

12.4.  *Force Majeure*:  The Licensee shall not be held in default under, or in noncompliance with, the provisions of this License, nor suffer any enforcement or penalty relating to noncompliance or default, where such noncompliance or alleged defaults occurred or were caused by a Force Majeure.  Furthermore, the parties hereby agree that it is not the City's

Waltham Renewal License – 12/10/18

WCAC0000686

intention to subject the Licensee to penalties, fines, forfeitures or revocation of this License for violations of this License where the violation was a good faith error that resulted in no or minimal negative impact on the City and/or Subscribers, or where strict performance would result in practical difficulties and hardship being placed upon the Licensee that outweigh the benefit to be derived by the City and/or Subscribers.

12.5. *Performance Evaluations.* If, during the term of this License, the City conducts an evaluation of the Licensee's performance under this License or otherwise related to the Licensee's provision of Cable Service in the City, then the City shall provide the Licensee with a written report with respect to the Licensee's compliance within sixty (60) days after the conclusion of such evaluation.

12.6. *Delivery of Payments:* Licensee may use electronic funds transfer to make any payments to the City required under this License if the same is allowed by the Auditor and/or Treasurer of the City of Waltham.

12.7. *Notices*: Unless otherwise expressly stated herein, notices required under this License shall be mailed first class, postage prepaid, to the addressees below. Each party may change its designee by providing written notice to the other party.

12.7.1. Notices to the Licensee shall be mailed to:

Verizon New England Inc.
6 Bowdoin Square
10th Floor
Boston, MA 02114
Attention: Donna C. Cupelo, Region Vice President

12.7.2. with a copy to:

Verizon Legal Department
140 West Street, 6th Floor
New York NY 10007
Attention: Monica Azare, Vice President and Deputy General Counsel

12.7.3. Notices to the Issuing Authority shall be mailed to:

Mayor's Office
City Hall
610 Main Street
Waltham, MA 02452

12.7.4. with a copy to:

Waltham Renewal License – 12/10/18

WCAC0000687

Office of the City Solicitor
City of Waltham
Law Department
119 School Street
Waltham, MA 02451

12.8. *Entire Agreement*: This License and the Exhibits hereto constitute the entire agreement between the Licensee and the City, and it supersedes all prior or contemporaneous agreements, representations or understandings (written or oral) of the parties regarding the subject matter hereof.

12.9. *Amendments*: Amendments or modifications to this License shall be mutually agreed to in writing by the parties.

12.10. *Captions*: The captions and headings of articles and sections throughout this Agreement are intended solely to facilitate reading and reference to the sections and provisions of this Agreement. Such captions shall not affect the meaning or interpretation of this Agreement.

12.11. *Severability*: If any section, subsection, sentence, paragraph, term, or provision hereof is determined to be illegal, invalid, or unenforceable by any court of competent jurisdiction or by any State or federal regulatory authority having jurisdiction thereof, such determination shall have no effect on the validity of any other section, subsection, sentence, paragraph, term or provision hereof, all of which will remain in full force and effect for the term of this License.

12.12. *Recitals*: The recitals set forth in this Agreement are incorporated into the body of this Agreement as if they had been originally set forth herein.

12.13. *FTTP Network Transfer Prohibition*: Under no circumstance including, without limitation, upon expiration, revocation, termination, surrender, denial of renewal of this License or any other action to forbid or disallow the Licensee from providing Cable Services, shall the Licensee or its assignees be required to sell any right, title, interest, use or control of any portion of the Licensee's FTTP Network including, without limitation, the Cable System and any capacity used for Cable Service or otherwise, to the City or any third party. The Licensee shall not be required to remove the FTTP Network or to relocate the FTTP Network or any portion thereof as a result of revocation, expiration, termination, surrender, denial of renewal or any other action to forbid or disallow the Licensee from providing Cable Services.

12.14. *Interpretation*: The City and the Licensee each acknowledge that it has received independent legal advice in entering into this Agreement. In the event that a dispute arises over the meaning or application of any term(s) of this Agreement, such term(s) shall not be construed by the reference to any doctrine calling for ambiguities to be construed against the drafter of the Agreement.

WCAC0000688

12.15. *No Third Party Beneficiary:* Nothing in this License shall be construed to create or confer any rights or benefits to any third party.

12.16. *Jurisdiction:* Except as otherwise set forth in this License, exclusive jurisdiction and venue over any dispute arising out of this License shall be in a court of appropriate venue and subject matter jurisdiction located in the Commonwealth of Massachusetts, and the parties hereby agree to be subject to the personal jurisdiction of said court for the resolution of any such dispute. This provision is not intended to limit the right of either party to remove a matter to Federal or State court in Massachusetts as permitted by law.

## SIGNATURE PAGE FOLLOWS

WCAC0000689

AGREED TO THIS ___15TH___ DAY OF DECEMBER 2018.

CITY OF WALTHAM
By its Mayor:

Mayor Jeannette McCarthy
President

VERIZON NEW ENGLAND INC.

By: _Donna C Cupelo_

Donna C. Cupelo, Region Vice

Approved as to Form:

Approved as to Form:

Pamela Goldstein
Law Department
Associate General Counsel
November 29, 2018

Waltham Renewal License

Signature Page

WCAC0000690

EXHIBITS

EXHIBIT A – MUNICIPAL BUILDINGS TO BE PROVIDED FREE CABLE
SERVICE

EXHIBIT B – GROSS REVENUE REPORTING FORM

EXHIBIT C – CUSTOMER SERVICE STANDARDS

EXHIBIT D – PERFORMANCE BOND

Waltham Renewal License – 12/10/18

WCAC0000691

# EXHIBIT A

## WALTHAM PUBLIC SCHOOLS

| | | |
|---|---|---|
| Waltham High School | 617 Lexington Street | Waltham, MA 02452 |
| Kennedy Middle School | 655 Lexington Street | Waltham, MA 02452 |
| South Middle School | 510 Moody Street | Waltham, MA 02453 |
| Banks School (Empty) | 948 Main Street | Waltham, MA 02451 |
| Bright School | 260 Grove Street | Waltham, MA 02453 |
| Fitch School | 10 Ash Street | Waltham, MA 02453 |
| Fitzgerald School | 140 Beal Road | Waltham, MA 02452 |
| Hardy School | 51 Lake Street | Waltham, MA 02452 |
| Lawrence School | 258 Trapelo Road | Waltham, MA 02452 |
| Macarthur School | 494 Lincoln Street | Waltham, MA 02452 |
| Northeast School | 70 Putney Lane | Waltham, MA 02452 |
| Plympton School | 20 Farnsworth Street | Waltham, MA 02451 |
| Stanley Senior Center | 488 Main Street | Waltham, MA 02452 |
| Whittemore School | 30 Parmenter Road | Waltham, MA 02453 |

## WALTHAM POLICE DEPARTMENT

| | | |
|---|---|---|
| Police Department | 155 Lexington Street | Waltham, MA 02452 |
| Police Department | 11 Carter Street | Waltham, MA 02452 |

## WALTHAM FIRE DEPARTMENT

| | | |
|---|---|---|
| Chief's Office | 163 Lexington Street | Waltham, MA 02452 |
| Central Station | 175 Lexington Street | Waltham, MA 02452 |
| Moody Street Station | 533 Moody Street | Waltham, MA 02453 |
| Eng 3 Willow Street | 67 Willow Street | Waltham, MA 02453 |
| Eng 4 Prospect Street | 35 Prospect Street | Waltham, MA 02453 |
| Eng 7 Lake Street | 104 Lake Street | Waltham, MA 02453 |
| Eng 8 Trapelo Road | 699 Trapelo Road | Waltham, MA 02453 |

## WALTHAM PUBLIC LIBRARIES

| | | |
|---|---|---|
| Public Library | 735 Main Street | Waltham, MA 02451 |

### Other Municipal Buildings

| | | |
|---|---|---|
| Leary Field (If needed) | Athletic Field Road | Waltham, MA 02451 |
| E-911 Center (If Needed) | 165 Lexington Street | Waltham, MA 02452 |
| Fernald Property | 200 Trapelo Road | Waltham, MA 02452 |

Waltham Renewal License – 12/10/18

WCAC0000692

## EXHIBIT B

## GROSS REVENUE REPORTING FORM

# PEG Report 1st Quarter [YEAR]

## *Sample City*

*Verizon - fBA*

*MA*

**PEG Fee Rate:** ___ %

| | MONTH | MONTH | MONTH | Quarter Total |
|---|---|---|---|---|
| Monthly Recurring Cable Service Charges (e.g. Basic, Enhanced Basic, Premium and Equipment Rental) | | | | |
| Usage Based Charges (e.g. PayPer View, Installation) | | | | |
| Advertising | | | | |
| Home Shopping | | | | |
| Late Payment | | | | |
| Other Misc. (Leased Access & Other Misc.) | | | | |
| License Fee Billed | | | | |
| PEG Fee Billed | | | | |
| Less: | | | | |
| Bad Debt | | | | |
| Total Receipts subject to PEG Fee Calculation | | | | |
| PEG Grant Before Adjustment Adjustment | | | | |
| PEG Grant | | | | |

Verizon New England Inc. is hereby requesting that this information be treated as confidential and proprietary business information in accordance with the terms of the Cable Television Renewal License granted to Verizon New England Inc. This information is not otherwise readily ascertainable or publicly available by proper means by other persons from another source in the same configuration as provided herein, would cause substantial harm to competitive position of Verizon in the highly competitive video marketplace if disclosed, is intended to be proprietary confidential business information and is treated by Verizon as such.

Waltham Renewal License – 12/10/18

# EXHIBIT C

## CUSTOMER SERVICE STANDARDS

These standards shall apply to the Licensee to the extent it is providing Cable Services over the Cable System in the City.

## DEFINITIONS

    A.   Respond:  The Licensee's investigation of a Service Interruption by receiving a Subscriber call and opening a trouble ticket, if required.

    B.   Service Call:  The action taken by the Licensee to correct a Service Interruption the effect of which is limited to an individual Subscriber.

    C.   Service Interruption:  The loss of picture or sound on one or more cable Channels.

    D.   Significant Outage:  A significant outage of the Cable Service shall mean any Service Interruption lasting at least four (4) continuous hours that affects at least ten percent (10%) of the Subscribers in the Service Area.

    E.   Standard Installation:  Installations where the Subscriber is within one hundred fifty (150) feet of trunk or feeder lines.

## SECTION 1: TELEPHONE AVAILABILITY

    A.   The Licensee shall maintain a local and/or a toll-free number to receive all calls and inquiries from Subscribers in the City and/or residents regarding Cable Service. The Licensee representatives trained and qualified to answer questions related to Cable Service in the Service Area shall be available to receive reports of Service Interruptions twenty-four (24) hours a day, seven (7) days a week, and other inquiries during Normal Business Hours. The Licensee representatives shall identify themselves by name when answering this number. After Normal Business Hours, the toll-free number may be answered by an Automated Response Unit ("ARU") or a Voice Response Unit ("VRU"), including an answering machine. Inquiries received after Normal Business Hours shall be responded to by a trained company representative on the next business day.

    B.   The Licensee's telephone numbers shall be listed, with appropriate description (e.g. administration, customer service, billing, repair, etc.), in the directory published by the local telephone company or companies serving the Service Area, beginning with the next publication cycle after acceptance of this License by the Licensee.

Waltham Renewal License – 12/10/18

WCAC0000694

C.     The Licensee may use an ARU or a VRU to distribute telephone calls. If a foreign language routing option is provided, and the Subscriber does not enter an option, the menu will default to the first tier menu of English options.

After the first tier menu (not including a foreign language rollout) has run through three times, if customers do not select any option, the ARU or VRU will forward the call to a queue for a live representative.  The Licensee may reasonably substitute this requirement with another method of handling calls from customers who do not have touch-tone telephones.

D.     Under Normal Operating Conditions, calls received by the Licensee shall be answered within thirty (30) seconds.  The Licensee shall meet this standard for ninety percent (90%) of the calls it receives at all call centers receiving calls from Subscribers, as measured on a cumulative quarterly calendar basis.  Measurement of this standard shall include all calls received by the Licensee at all call centers receiving calls from Subscribers, whether they are answered by a live representative, by an automated attendant, or abandoned after 30 seconds of call waiting.

E.     Under Normal Operating Conditions, callers to the Licensee shall receive a busy signal less than three percent (3%) of the time during any calendar quarter.

F.     Upon written request from the City, but in no event more than once a quarter thirty (30) days following the end of each quarter, the Licensee shall report to the City the following for all call centers receiving calls from Subscribers except for temporary telephone numbers set up for national promotions:

(1)     Percentage of calls answered within thirty (30) seconds as set forth in Subsection 1.D.

(2)     Percentage of time customers received busy signals when calling the Verizon service center as set forth in Subsection 1.E.

Subject to applicable consumer privacy requirements, underlying activity will be made available to the City for review upon reasonable written request.

At the Licensee's option, the measurements and reporting above may be changed from calendar quarters to billing or accounting quarters.  The Licensee shall notify the Issuing Authority in writing of such a change at least thirty (30) days in advance of any implementation.

## SECTION 2:  INSTALLATIONS AND SERVICE APPOINTMENTS

A.     All installations will be in accordance with applicable FCC rules relating to grounding, connection of equipment to ensure reception of Cable Service, and the provision of required consumer information and literature to adequately inform the Subscriber in the utilization of the Licensee-supplied equipment and Cable Service.

Waltham Renewal License – 12/10/18

WCAC0000695

B.    The Standard Installation shall be performed within seven (7) business days after the placement of the Optical Network Terminal ("ONT") on the customer's premises, but in any event within fourteen (14) business days after an order is placed, or within seven (7) business days after an order is placed if the ONT is already installed on the customer's premises. The Licensee shall meet this standard for ninety-five percent (95%) of the Standard Installations it performs, as measured on a calendar quarter basis, excluding customer requests for connection later than seven (7) days after ONT placement or later than seven (7) days after an order is placed if the ONT is already installed on the customer's premises.

C.    The Licensee will offer Subscribers "appointment window" alternatives for arrival to perform installations, Service Calls and other activities of a maximum four (4) hours scheduled time block during appropriate daylight available hours, generally beginning at 8:00 AM unless it is deemed appropriate to begin earlier by location exception. At the Licensee's discretion, the Licensee may offer Subscribers appointment arrival times other than these four (4) hour time blocks, if agreeable to the Subscriber. These hour restrictions do not apply to weekends.

## SECTION 3: SERVICE INTERRUPTIONS AND OUTAGES

A.    The Licensee shall notify the Issuing Authority of any Significant Outage of the Cable Service.

B.    The Licensee shall exercise commercially reasonable efforts to limit any Significant Outage for the purpose of maintaining, repairing, or constructing the Cable System. Except in an emergency or other situation necessitating a more expedited or alternative notification procedure, the Licensee may schedule a Significant Outage for a period of more than four (4) hours during any twenty-four (24) hour period only after the City and each affected Subscriber in the Service Area have been given fifteen (15) days prior notice of the proposed Significant Outage. Notwithstanding the foregoing, the Licensee may perform modifications, repairs and upgrades to the System between 12:01 a.m. and 6 a.m. which may interrupt service, and this Section's notice obligations respecting such possible interruptions will be satisfied by notice provided to Subscribers upon installation and in the annual subscriber notice.

C.    Under Normal Operating Conditions, the Licensee must Respond to a call from a Subscriber regarding a Service Interruption or other service problems within the following time frames:

(1)    Within twenty-four (24) hours, including weekends, of receiving Subscriber calls respecting Service Interruptions in the Service Area.

(2)    The Licensee must begin actions to correct all other Cable Service problems the next business day after notification by the Subscriber or the City of a Cable Service problem.

Waltham Renewal License – 12/10/18

WCAC0000696

D.    Under Normal Operating Conditions, the Licensee shall complete Service Calls within seventy-two (72) hours of the time the Licensee commences to Respond to the Service Interruption, not including weekends and situations where the Subscriber is not reasonably available for a Service Call to correct the Service Interruption within the seventy-two (72) hour period.

E.    The Licensee shall meet the standard in Subsection E. of this Section for ninety percent (90%) of the Service Calls it completes, as measured on a quarterly basis.

F.    Upon written request by the City, the Licensee shall annually provide the City with a copy of the Form 500 regarding customer complaints filed with the State pursuant to M.G.L Chapter 166A §10.

G.    Under Normal Operating Conditions, the Licensee shall provide a credit upon Subscriber request when all Channels received by that Subscriber are out of service for a period of twenty-four (24) consecutive hours or more. The credit shall equal, at a minimum, a proportionate amount of the affected Subscriber(s) current monthly bill. In order to qualify for the credit, the Subscriber must promptly report the problem and allow the Licensee to verify the problem if requested by the Licensee. If Subscriber availability is required for repair, a credit will not be provided for such time, if any, that the Subscriber is not reasonably available.

H.    Under Normal Operating Conditions, if a Significant Outage affects all Video Programming Cable Services for more than twenty-four (24) consecutive hours, the Licensee shall issue an automatic credit to the affected Subscribers in the amount equal to their monthly recurring charges for the proportionate time the Cable Service was out, or a credit to the affected Subscribers in the amount equal to the charge for the basic plus enhanced basic level of service for the proportionate time the Cable Service was out, whichever is technically feasible or, if both are technically feasible, as determined by the Licensee provided such determination is non-discriminatory. Such credit shall be reflected on Subscriber billing statements within the next available billing cycle following the outage.

I.    With respect to service issues concerning cable services provided to the City facilities, Licensee shall Respond to all inquiries from the City within four (4) hours and shall commence necessary repairs within twenty-four (24) hours under Normal Operating Conditions. If such repairs cannot be completed within twenty-four (24) hours, the Licensee shall notify the City in writing as to the reason(s) for the delay and provide an estimated time of repair.

J.    Licensee may provide all notices identified in this Section electronically or on-screen.

## SECTION 4: CUSTOMER COMPLAINTS

Under Normal Operating Conditions, the Licensee shall resolve Subscriber complaints referred by the Issuing Authority within three (3) business days; provided that the Licensee shall

Waltham Renewal License – 12/10/18

WCAC0000697